**412** Craig *v.* Commissioners of Sinking Fund of City of N. Y.

First Department, February, 1924. [Vol. 208

---

CHARLES L. CRAIG, as Comptroller of the City of New York, Appellant, *v.* THE COMMISSIONERS OF THE SINKING FUND OF THE CITY OF NEW YORK (Other than the Plaintiff) and Another, Respondents.

First Department, February 8, 1924.

Municipal corporations — city of New York — resolution authorizing sale of buildings passed by commissioners of sinking fund in absence of comptroller is invalid under Greater New York charter, §§ 205 and 1553 — ordinance of 1844 requiring presence of comptroller at meetings of sinking fund commissioners is in effect — practical construction of powers of sinking fund commissioners indicates necessity for comptroller's presence for legal conduct of business of commission — general clause in charter providing that majority of board may act does not limit special provision — Appellate Division has power to entertain action for purpose of rendering declaratory judgment under Civil Practice Act, § 473 — injunction is only adequate relief.

The comptroller of the city of New York is required by sections 205 and 1553 of the Greater New York charter and the ordinance of 1844 referred to in section 205, which is still in effect, to be present at a meeting of the commissioners of the sinking fund in order that any action taken by the commissioners at the meeting may be legal.

Accordingly, a resolution amending a prior resolution by striking out a portion which directed that the sale of certain buildings be carried out under the direction of the comptroller, and by providing that the sale should take place under the direction of the city chamberlain, is illegal where it is adopted by the commissioners of the sinking fund at a special meeting at which the comptroller is not present.

The practical construction of the ordinance of 1844, which provides that any four or more persons named as commissioners of the sinking fund, " of whom the comptroller shall be one," are authorized to discharge the duties vested in them, which provision has been in existence for more than a century, shows that it has always been considered necessary to have the comptroller present to conduct the business of the sinking fund commission legally.

A general provision of the Greater New York charter, that a majority of any board shall constitute a quorum for the transaction of business, does not override and limit the special provision requiring the presence of the comptroller at meetings of the sinking fund commission in order to make any action taken by that commission legal.

The Appellate Division has power to entertain this controversy for the purpose of rendering a declaratory judgment pursuant to section 473 of the Civil Practice Act, determining the rights of the parties, the plaintiff having asked for such judgment in his complaint.

An injunction restraining the carrying out of the resolution is, under the circumstances, the only means of adequately protecting the public interests, and, therefore, the defendants are restrained from executing the resolution they illegally passed.

DOWLING and McAVOY, JJ., dissent in part, with memorandum.

APPEAL by Charles L. Craig, as comptroller, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of December, 1923, as resettled by an order entered in said clerk's office on the 24th day of December, 1923, denying the plaintiff's motion for an injunction *pendente lite* and vacating the temporary injunction granted on October 5, 1923.

*Charles L. Craig* of counsel, for the appellant.

*George P. Nicholson, Corporation Counsel [John F. O'Brien* of counsel; *John Lehman* with him on the brief], for the respondents.

*John Godfrey Saxe,* as special counsel designated by corporation counsel [*Louis H. Hahlo* and *Edward S. Dore* with him on the brief], for the respondent Philip Berolzheimer, city chamberlain.

MARTIN, J.:

A controversy has arisen between the comptroller of the city of New York and the other members of the sinking fund commission, with reference to their power to transact business in the absence of the comptroller.

On July 26, 1923, in the regular course of business at a meeting of the sinking fund commission, a resolution was passed with the concurrence of the comptroller, authorizing the sale by the sinking fund commission, under the supervision of the comptroller, of certain buildings located on premises required for the construction of school houses. In passing it may be noted that these buildings and the land upon which they are located have been the property of the city for sixteen years.

Thereafter, on September 13, 1923, and during the absence of the comptroller, a special meeting of the sinking fund commission was called and the resolution of July 26, 1923, was rescinded, and a new resolution adopted providing that the sale take place under the direction of the city chamberlain.

**414** CRAIG *v.* COMMISSIONERS OF SINKING FUND OF CITY OF N. Y.

First Department, February, 1924. [Vol. 208

The validity of this latter resolution is attacked by the comptroller on the ground that under the law such a resolution could not be passed during his absence.

Section 1553 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1912, chap. 436) provides as follows:

" § 1553. All property sold (other than land under water) shall be sold at auction, after previous public notice, under the superintendence of the appropriate head of department, except real property including buildings, fixtures and machinery therein, which, except as herein otherwise provided, shall be sold at public auction, or by sealed bids, after previous public notice, pursuant to a resolution adopted by the commissioners of the sinking fund and such sale shall be under the supervision of said commissioners and not otherwise. In case such buildings, fixtures and machinery be sold at public auction the commissioners of the sinking fund may provide as a condition of such sale that such buildings, fixtures or machinery shall not in any case be relocated or re-erected within the lines of any proposed street or other public improvement, and if after such sale such buildings or parts of buildings or other structures be relocated or re-erected within the lines of any proposed street or other public improvement title thereto shall thereupon become vested in the city of New York and a resale at public or private sale may be made in the same manner as if no prior sale had been made of the same."

It will be observed that the charter section provides that the sale shall be under the supervision of the sinking fund commissioners and not otherwise. Under this section it is doubtful if there is any right in the sinking fund commission to delegate its power.

The charter (§ 204) provides in part as follows: " There shall be a board of commissioners of the sinking fund composed of the mayor, comptroller, chamberlain, president of the board of aldermen and chairman of the finance committee of the board of aldermen, with all the powers and duties now assigned, designated and reposed by law or ordinance in the commissioners of the sinking fund of The City of New York, as heretofore constituted, of the city of Brooklyn * * *. The said board shall administer each of the said several sinking funds, and perform, carry out and exercise the several trusts, powers, obligations and duties relating thereto, in the same manner as the same would have been administered, performed, carried out and exercised if this act had not been passed, except as otherwise provided in this act. * * *."

Section 205 of the charter (as amd. by Laws of 1913, chap. 259) provides: " The funds to be known as the sinking fund of The City of New York as hereinafter constituted, shall be administered

by the commissioners of the sinking fund, in like manner as provided by the ordinance of the mayor, aldermen and commonalty of The City of New York, approved by the mayor, February twenty-second, eighteen hundred and forty-four, so far as the same may be applicable; provided, however, that nothing contained in said ordinance shall affect or alter the composition of the board of commissioners of the sinking fund, as by this act constituted."

By this section of the charter it is provided that all the powers of the sinking fund commission are to remain as by law and ordinances provided.

The existing ordinance with reference to the sinking fund commission will be found in chapter 2, article 1, section 3, of the Code of Ordinances of the City of New York (Cosby's Code of Ordinances [Anno. 1922], p. 15), which reads:

" § 3. Board of the commissioners of the sinking fund; quorum. Any four or more of the members of the board of commissioners of the sinking fund, as constituted by the charter, of whom the comptroller shall be one, shall be and are hereby authorized to discharge the trusts and duties vested in them by this article."

The parties seek a construction of this ordinance, which, through various intermediate antecedents, is a revision of the ordinance of 1844. In passing upon the question here under review, it will be necessary to refer to prior ordinances which were re-enacted from time to time.

As early as August 9, 1813, an ordinance was passed creating " the Commissioners of the Sinking Fund, for the Redemption of the New-York City Stock," which ordinance provided for the personnel of the commission, and provided that any three or more of the members " shall be empowered to discharge the trust and duties vested in, and imposed upon them by this law, as fully as though all of the said commissioners had concurred therein." That ordinance did not limit the action of the three or more members to any particular duties; it included all duties imposed upon them by law.

On May 5, 1817, another ordinance, known as chapter 35, was passed, and, after providing for the personnel of the board, it provided " that any three or more of them, *of whom* the comptroller shall be one," shall be empowered to discharge the trusts and duties vested in and imposed upon them by this law, as fully as though all of the said commissioners had concurred therein.

This language is practically the same as that previously used. It is general in character and applies to all acts of the commission. In 1817 it was specifically provided that the comptroller was to be one of three or more members empowered to transact business.

This language clearly indicates an amendment for the sole purpose of requiring action by the financial officer of the city before any proceeding of the commission shall be binding or legal. It appears by this amendment that the idea of making the comptroller a necessary party to the transaction of all business of the sinking fund commission was the result of deliberation, and the requirement was inserted in the ordinance for the protection of the city.

On February 22, 1844, the ordinance was remodelled for the purpose of including more sources of income for the sinking fund. The clauses providing for the personnel of the commission and its general powers were re-enacted, but evidently misplaced. Although the identical language theretofore used was copied from the prior ordinance, it is placed in chapter 19, under title 3, instead of being in its proper place at the beginning of the ordinance, under title 1.

It has been held, however, that the transposition of the words when the intent is clear does not affect the meaning of a statute. (*Davis* v. *Davis*, 75 N. Y. 221.)

However, after again providing by section 1 of title 3 for the personnel of the commission and providing a title, " The Commissioners of the Sinking Fund of the City of New-York," section 2 of title 3 of the ordinance of 1844 provides:

" § 2. Any four or more of the persons named in the first section of this title, of whom the comptroller shall be one, shall be and are hereby authorized to discharge the trusts and duties vested in them by this ordinance."

It will be noted that the language used in the prior ordinance, with slight change in phraseology, " of whom the comptroller shall be one, shall be and are hereby authorized to discharge the *trusts and duties vested in them by this ordinance*," was retained. The language embraces, as it did theretofore, *all* duties imposed. One of these duties imposed by law was to collect all moneys due on the sale of property of the corporation.

The comptroller properly contends that the ordinance of 1844 is in full force and effect. That appears from the charter provision which refers to it and provides that it shall remain effective. We, therefore, agree with his contention that the sinking fund commissioners may not pass any binding resolution in his absence, and that their action in passing the resolution in question was illegal.

It is apparent that the power in question was given to the comptroller after thoughtful consideration. Its efficacy has not only been recognized for a century, but it appears never before to have been challenged. It is one of those numerous checks found in laws and ordinances granting power to public officials, recognized as necessary to promote the welfare of the people living

CRAIG v. COMMISSIONERS OF SINKING FUND OF CITY OF N. Y.   417.

App. Div. 412]          First Department, February, 1924.

under our form of government.   There does not appear to be any substantial reason for challenging it at this time.   Its value appears to have been demonstrated by past experience.

The comptroller also points out that the defendants are bound by a practical construction of this ordinance, concurred in by all members of the sinking fund commission for over a century; for it has been considered necessary during all that period to have the comptroller present to conduct the business of the sinking fund commission.

In *City of New York* v. *New York City R. Co.* (193 N. Y. 543, 548) Judge VANN makes this observation:   " Under these circumstances the practical construction of the parties by a uniform course of conduct under all administrations of the city government for more than forty years is of controlling importance.   When the parties to a contract of doubtful meaning, guided by self-interest, enforce it for a long time by a consistent and uniform course of conduct, so as to give it a practical meaning, the courts will treat it as having that meaning, even if as an original proposition they might have given it a different one."   (See, also, *People ex rel. Metropolitan Life Ins. Co.* v. *Knapp*, 193 App. Div. 413.)

The defendants assert that the clause in the ordinance which provides for the presence of the comptroller is limited in its application to financial matters.   They also urge that it is inapplicable for the reason that there is a clause in the charter (§ 1541, as amd. by Laws of 1922, chap. 638) which provides that a majority of the members of a board in any department of the city government shall constitute a quorum to transact business.   The history of the ordinance leaves no room for doubt as to its applicability.   Where an ordinance, as here, expressly provides how many and which members shall transact business, a general statute or a general provision of the charter does not limit or affect its provisions, especially where section 205 of the charter (as amd. *supra*) continues the ordinance, and we are required by section 1556 of the charter (as amd. by Laws of 1917, chap. 382) to take judicial notice of said ordinance, and the board of aldermen is directed by section 57 of the charter to publish it with the Code of Ordinances.

The comptroller being the chief financial officer of the city and being charged with the responsibility for the collection of all moneys due the city, it is reasonable and proper that he should be present at a meeting which provides for the sale of old buildings, the payment for which will eventually go into the sinking fund to reduce the city debt.

27

**418** CRAIG *v.* COMMISSIONERS OF SINKING FUND OF CITY OF N. Y.

First Department, February, 1924. [Vol. 208

Defendants further contend that, in any event, this court is without power to entertain this controversy for the purpose of rendering a declaratory judgment, although the parties seek in this action an adjudication with reference to their respective rights as members of the sinking fund commission.

Under section 473 of the Civil Practice Act it is provided: " The Supreme Court shall have power in any action or proceeding to declare rights and other legal relations on request for such declaration whether or not further relief is or could be claimed, and such declaration shall have the force of a final judgment. Such provisions shall be made by rules as may be necessary and proper to carry into effect the provisions of this section." (See, also, *London Assn. of Shipowners & Brokers* v. *London & India Docks Joint Committee*, L. R. [1892] 3 Ch. 242.)

It would be difficult to find a more appropriate case for the application of the law permitting declaratory judgments. We are told that important public interests are involved, the speedy determination of which is imperative. It is, therefore, necessary that the respective rights of the parties be determined without delay. Their determination will probably promote the public welfare and render possible the performance of acts necessary for the advancement of the business interests of the city.

A somewhat similar public question was heretofore disposed of under the terms of that act. (*Manhattan Bridge Three-Cent Line* v. *City of New York*, 204 App. Div. 89; affd., 236 N. Y. 559.)

Defendants argue that in no event should an injunction be granted. But plaintiff asserts that, if the resolution which is attacked were to be carried into effect, it would result in great loss to the city. The possibility of such a result should be met in a case where, as here, the law is so clear.

The appropriate remedy in some cases where a public official, body or board has erroneously decided a matter, may be a review by certiorari; in other cases a taxpayer's action may be resorted to; and in some instances threatened acts, unlawful in character, may require the intervention of a prohibition order. Here, however, these remedies will not suffice, and it is necessary to issue an injunction so that the public interests may be adequately protected.

In *People* v. *Canal Board of New York* (55 N. Y. 390) ALLEN, J., writing for the court, said: " That public bodies and public officers may be restrained by injunction from proceeding in violation of law, to the prejudice of the public or to the injury of individual rights, cannot be questioned. A usurpation of powers may by this process be prevented in a proper case, and a waste, misapplication or

diversion of public property or trust funds be enjoined, and an alienation or renunciation of a public franchise be forbidden and restrained."

In *Mayor, etc.,* v. *Board of Health* (31 How. Pr. 385, 393) the court said: " An injunction was granted in this case restraining the defendants from removing, tearing down, or in any way interfering with the stands or stalls attached to and forming a part of Washington market. The defendants move to dissolve the injunction.   Several questions were discussed before me on the argument, which I propose to notice so far as I consider them applicable to the decision of the motion.

" As to the rights of the plaintiffs to maintain this action, although it would, perhaps, have been better if the corporate authorities who own the fee of the market, and who, by law, were authorized to establish it, had been joined with the plaintiffs, I am of opinion that they have a sufficient interest, as commissioners of the sinking fund, to maintain this action.   They are, by virtue of the statute, authorized to collect and apply to the payment of the city debt the proceeds of rents, etc., from the public markets, and, as such trustees, they have a right and it is their duty, to protect the property from destruction from which such rents accrue, and to see that they are properly applied to the payment of the public debt.

" The ordinance of the common council places all the revenues from the public markets in their charge, and by a subsequent statute that ordinance was recognized and no alteration therein could be made without the assent of the Legislature."

In addition it has been alleged, and not challenged, that the authority to vacate premises such as are here in question is lodged in the comptroller or his subordinate, the collector of city revenue, who is charged with the leasing of property and the collection of rents and revenues received from the numerous tenants who occupy the buildings.

Section 100 of article 3 of chapter 2 of the Code of Ordinances of the City of New York provides that " The comptroller shall superintend all real estate of the city and report to the board of aldermen all encroachments thereon.   He shall direct and superintend the collection of all rents or other moneys due the city."   The collection of rents is provided for by section 171 of article 6 of chapter 2 of said Code, which is as follows: " The comptroller shall direct legal proceedings to be taken when necessary to enforce payment of rents or other debts due to the corporation, or to obtain possession of premises to which the corporation is entitled." (See Cosby's Code of Ordinances [Anno. 1922], pp. 23, 25.)

The endless confusion which would result in permitting two

city officials with conflicting views to retain the power of termi-nating or extending the tenancies may well be imagined, and of course would be intolerable. It will readily be seen that to have one officer with authority to collect the rents and with power to extend or terminate the tenancies, and another with authority to sell or demolish the buildings and grant or withhold extensions of time to remove the same, but with no means of com-pelling the tenants to vacate, would result not only in divided responsibility, but in all probability would be the means of forcing the city into expensive litigation.

Section 1437 of the charter (as added by Laws of 1915, chap. 596), in relation to contracts of landlord and tenant affected by the acquisition of school sites, among other things provides: " All tenants in possession of said premises at the time of vesting of title thereto in the city shall become tenants at will of said city unless within ten days after the vesting of title they shall elect to vacate and give up their respective holdings."

Section 228 of the Real Property Law provides that a tenancy at will may be terminated only upon written notice of not less than thirty days. The notice terminating the tenancy may be given only by the comptroller, or the collector of city revenue acting under the comptroller's direction. Such a notice may be necessary in this case. (*Matter of Rourke* v. *Metz*, 139 App. Div. 155; *Witherbee, Sherman & Co.* v. *Wykes*, 159 id. 24; *Baumann* v. *City of New York*, 180 id. 498; *Larned* v. *Hudson*, 60 N. Y. 102.)

We have, therefore, for the reasons stated, come to the con-clusion that the order should be reversed, with ten dollars costs and disbursements to the appellant, and the motion granted.

CLARKE, P. J., and FINCH, J., concur; DOWLING and McAVOY, JJ., dissent.

DOWLING and McAVOY, JJ. (dissenting):

We concur with so much of the opinion herein as declares the powers and rights of the comptroller of the city of New York, and also in the conclusion reached by the court that this is a proper controversy for the rendering of a declaratory judgment as to the rights of the parties. We dissent, however, from the granting of the injunction herein upon the ground that, in our opinion, this is not a proper case for the granting of an injunction either temporary or permanent, nor can such be granted in this form of action.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs. Settle order on notice.