BOARDWALK STORES CORPORATION, Appellant, *v.* ROBERT MOSES, Individually and as Commissioner of Parks of the City of New York, et al., Respondents.

Second Department, July 2, 1945.

*William B. Roulstone* and *Samuel Lawrence Brennglass* for appellant.

*Ignatius M. Wilkinson, Corporation Counsel* (*Julius Isaacs, Louis M. Weintraub* and *William A. Marks* of counsel), for Robert Moses, individually and as Commissioner, etc., and the City of New York, respondents.

*Franklin Nevius* and *Emil V. Pilz* for Gahagan Construction Corporation, respondent.

LEWIS, J. This is an action for trespass, in which treble damages are requested for the willful and malicious destruction in December, 1938, of structures belonging to plaintiff.

On March 31, 1938, the Board of Estimate approved the selection by the Commissioner of Parks of lands for several parkways, including Shore Parkway, and authorized the acquisition of title thereto by purchase or condemnation. On April 7, 1938, the Board of Estimate authorized the purchase for park purposes of a ten-acre plot owned by plaintiff and occupied by amusement devices, concession stands, and other buildings. Most of this plot had been included within the lines of the site required for the development of the Shore Parkway.

Plaintiff, by a conveyance to the City of New York, made on May 11, 1938, a day prior to the vesting of title in the parkway proceeding, reserved title to all the " buildings and improvements and personal property " upon the plot conveyed. The deed specifically stated that it was the intention of the parties thereto to convey " only the land and not any of the improvements thereon." The deed contained no provision as to removal of the property reserved by the plaintiff.

On the date of the conveyance, the Director of Real Estate of the City of New York approved plaintiff's application for

permission to continue to use the land until September 30, 1938. In this application it was stated that plaintiff's "tenancy" was "to commence on the 11th day of May, 1938, and to terminate on the 30th day of September, 1938, at a total rental of $3,000, payable in advance"; that plaintiff agreed "to make all necessary repairs at his own cost and expense and  *  *  * keep said premises and the adjacent sidewalks in good repair and free from deposits of objectionable materials"; and that plaintiff should have "exclusive possession and control of the said premises."

The plaintiff continued in possession and thereafter, by notice dated October 20, 1938, served by the Corporation Counsel, plaintiff was notified "pursuant to Section 228, Real Property Law," to vacate the premises within thirty days and within that time to remove all existing structures located thereon; and, further, that the City would hold the plaintiff "as a holdover tenant, for the fair and reasonable value of the use and occupation of said premises, from October 1, 1938 to date of the vacation thereof." (Cf. *Craig* v. *Commissioners of Sinking Fund of City of N. Y.*, 208 App. Div. 412, 420.) The thirty-day period expired on November 19, 1938. The City thereafter took no legal proceedings to dispossess the plaintiff.

The City contends that its Director of Real Estate had no power, especially without the consent of the Board of Estimate, to lease this ten-acre park site to plaintiff, and that the Corporation Counsel had no power to extend plaintiff's period of possession. Citing subdivision c of section B15–36.0 of the Administrative Code of the City of New York, the City contends that it was entitled, at any time after it obtained title, to take possession of its land without suit or other judicial proceedings. It offers no authority, however, for the proposition that it was entitled in obtaining such possession willfully to destroy plaintiff's personal property.

Prior to and during the month of December, 1938, the plaintiff removed certain of its structures and equipment from the premises, but, at the time of the acts complained of, property belonging to the plaintiff, which we may not on the present record regard as having negligible value, still remained on the land that plaintiff had in May conveyed to the City. This property, according to the testimony of one witness, had been partially reconstructed by the installation of new flooring, had been jacked up on blocks for purposes of removal and was ready for removal. By reason of the City's rezoning of certain adjoining property, the plaintiff had been prevented from

re-erecting its structures on an adjoining site which it owned or had under lease. (See, as to a carousel inclosure, *Matter of Golden City Park Corp.* v. *Bd. of Standards,* 263 App. Div. 52, affd. 289 N. Y. 720.)

In November, 1938, the City had awarded to defendant Gahagan Construction Corporation (hereinafter called Gahagan), a contract covering the parkway improvement which required the contractor, among other things, to demolish the structures within the area that had been acquired by the City for park purposes. The City's contract with Gahagan pro-vided that the " superstructure of the buildings shall become the property of the Contractor and shall be removed by him from the site of the property controlled by the owner." The contract contained no exception as to the property which had been reserved to the plaintiff in the park area, but the City expressly stated that it did not guarantee that " any  *  *  * material of value now existing in the buildings to be demolished will be present in the buildings after they are vacated."

The record contains evidence that during the month of December, 1938, Gahagan's employees, purporting to act at the direction of the Park Commissioner, under the contract awarded to it by the City, entered into possession of the lands that had been sold by plaintiff to the City and, over the protest of plaintiff's representatives, destroyed whatever structures remained upon the site. There is testimony that these demolitions were accomplished by Gahagan under a claim that the structures belonged to it under its contract with the City. There is further evidence that Gahagan's initial demolition work was done without a demolition permit. The Corporation Counsel, nevertheless, asserts that Gahagan acted in accordance with its contract with the City; that it acted in accordance with the City's express directions, as issued by the Park Commissioner; and, accordingly, reaffirms the position taken by the City on the trial that it will save Gahagan harmless from any recovery that may be allowed against the contractor.

Although dismissing the complaint, the trial court rejected defendants' contention that it had been demonstrated factually that plaintiff had abandoned the structures that were demolished by Gahagan. Upon this appeal all the parties have assumed that the structures reserved by the plaintiff were chattels. Viewing the evidence, as it must be regarded after a dismissal of the complaint, in the light most favorable to the plaintiff, we are compelled to conclude that the plaintiff at the time the structures were demolished, had not abandoned them or acquiesced in their destruction.

*Kulenkampff & Co.* v. *City of New York* (N. Y. L. J., May 4, 1940, p. 2038, col. 6, affd. 260 App. Div. 920) and *Acme Ribbon Mills, Inc.,* v. *City of New York* (N. Y. L. J., Sept. 17, 1941, p. 641, col. 1, affd. 266 App. Div. 656, leave to appeal denied, 290 N. Y. 929), cited by defendants, are distinguishable. In those cases it was found that personal property had been abandoned by its owners. They were, therefore, held not entitled to be compensated for the destruction of the property after its abandonment. In the instant case, such abandonment had not been demonstrated. We must, therefore, assume that at the time of the demolition of the structures, they still remained the plaintiff's property. Although the plaintiff was no longer entitled to remain in possession of the City's land, and even though the City's agents or representatives were entitled to enter into possession of those lands, defendants were not entitled to destroy plaintiff's structures without its consent.

Defendants' right to remove plaintiff's property did not necessarily entitle them to sell or destroy it. By such sale or destruction, the defendants subjected themselves to liability for trespass or conversion. (1 Restatement, Torts, §§ 182, 221, 222; *Schuchardt* v. *Mayor, etc., of N. Y.,* 53 N. Y. 202; *Peters* v. *Mayor,* 8 Hun 405.) Several cases cited by defendants deal with the City's right summarily to abate *nuisances* located upon highways which are in public use. The principles of those cases require public officials to act at reasonable times and in a reasonable manner. (1 Restatement, Torts, § 202.) In removing such obstructions, property rights should not be invaded. (3 McQuillin on Municipal Corporations [2d ed.], § 983.) In any event, questions of fact were presented as to whether defendants acted reasonably in destroying, rather than in attempting to remove, the plaintiff's property, and as to whether the plaintiff had been given a reasonable opportunity to remove its structures. (See *Nichols* v. *Eustis,* 146 App. Div. 475.) The plaintiff was entitled to have the jury, in determining the reasonableness of the opportunity afforded the plaintiff, consider the facts and circumstances surrounding the efforts it had made to accomplish the removal of its property to another site. It should be noted that in the *Peters* case (*supra*), where the City was deemed to have condemned land but not the structures existing thereon, it was held that the City had improperly exercised dominion over buildings which their owners had, for sixteen months after condemnation, neglected to remove, and that the acts of the City were unauthorized.

Upon the record before us, the plaintiff established a prima facie case of trespass to its structures. We do not pass upon the plaintiff's right to treble damages, or upon any other issue.

The judgment dismissing the complaint on the merits at the close of the plaintiff's case, except as to damages, should be reversed on the law and facts and a new trial granted, with costs to abide the event.

The appeal from the order granting defendants' motion to dismiss the complaint should be dismissed. No such order is printed in the record.

JOHNSTON and ALDRICH, JJ., concur; CLOSE, P. J., and ADEL, J., concur as to dismissal of the appeal from the order, but as to the judgment they dissent and, on the ground that plaintiff failed to establish the cause of action alleged in the complaint, vote to affirm.

Judgment dismissing the complaint on the merits at the close of plaintiff's case, except as to damages, reversed on the law and the facts and a new trial granted, with costs to abide the event. The appeal from the order granting defendants' motion to dismiss the complaint is dismissed, without costs. No such order is printed in the record. [See amended decision *post,* p. 911.]