■ In the Matter of the TEMPORARY STATE STUDY COMMISSION TO INVESTI-GATE THE CITY OF NEW YORK, Respondent, v. EDWIN GREENIDGE, Appellant.—Order and judgment (one paper), Supreme Court, New York County, entered on or about July 24, 1972, affirmed, without costs and without disbursements. Our dissenting brother recognizes that the statute creating the Temporary State Study Commission (L. 1971, ch. 413), being in conflict with the earlier section 73 of the Civil Rights Law, would ordinarily control. To this may be added the axiomatic observation that, in areas of such apparent conflict, the general must usually yield to the particular. And, finally, the legislative intent in specifically reducing the numerical requirements of section 73 in enacting this new creative enabling statute is so sparklingly clear and apparent in the words themselves that recourse to other yardsticks is not only unnecessary but supererogatory. Particularly is this so as to the importation of the straw man of "repealer by implication." The enabling statute repeals nothing; it has no effect upon section 73 — indeed, neither section has anything to do with the other. Special Term held quite correctly that hearings conducted before one Commissioner or staff member of this commission, created by this enabling statute, are quite proper. As of this writing section 73 is in full effect, but only as to every other "temporary state commission having more than two members". Concur — Markewich, J. P., Kupferman, Murphy and Tilzer, JJ.; Steuer, J., dissents in the following memorandum. The respondent was served with a subpoena to testify before the petitioner, the Temporary State Study Commission to Investigate the City of New York. He responded to the subpoena but refused to answer any questions, except to identify himself, unless and until two members of the commission were present at the interrogation. Concededly two members were not present. By this proceeding the commission has obtained an order directing him to appear and testify. The "code of fair procedure for investigating agencies" adopted by the Legislature in 1954 is found in section 73 of the Civil Rights Law. Subdivision 9 provides: "No temporary state commission having more than two members shall have the power to take testimony at a public or private hearing unless at least two of its members are present at such hearing." Concededly the respondent commission has five members. However, it relies on its enabling statute (L. 1971, ch. 413) which it claims supersedes the code provision above quoted in respect to itself. The particular provisions relied upon are in section 5 (subds. c, d) which respectively provide that the commission may conduct public and private hearings and designate one or more members of the commission or its staff to preside over the hearing; and give the commission the power to subpoena witnesses and examine them under oath, and to "designate any of its members or any member of its staff to exercise any such power." Respondent correctly points out that where a statute creates a new body and the provisions of such statute are in conflict with a general statute, the provisions of the specific enabling statute control as to that body (*Craig* v. *Commissioners of Sinking Fund of City of New York,* 208 App. Div. 412). However, there is an equally cogent canon of statutory interpretation which springs from the general rule that repealer by implication is not favored. Exceptions are not to be found unless clearly • evinced by appropriate language (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 397). Wherever possible the provisions of both statutes must be given effect (*Matter of Board of Educ. of City of N. Y.* v. *Allen,* 6 N Y 2d 127). The question of whether such a legislative intent was manifested has been argued from three points of view: the wording of the enabling statute; similar wording in other statutes; and the

circumstances under which both the Civil Rights Law provisions and the enabling statute were passed. Taking these in order, it would appear that the literal meanings of both statutory provisions are not in conflict. All that the Civil Rights statute requires is that two members of the commission be present at the interrogation. The enabling statute gives power to one member of the commission or its staff to preside over a hearing or to examine a witness. While the commission contends that the power given it for practical purposes dispenses with the necessity of the presence of two, or indeed any number, it cannot be reasonably contended that this is the unmistakable intent of the words used. Secondly, reference is had to the exact same wording in conferring grants of power to the Temporary State Commission of Investigation (L. 1958, ch. 989, § 2, subd. 11). After identical provisions for the designation of one member or a member of the staff to preside over hearings and to examine witnesses, there is a caveat (subd. d) : " The commission shall not have the power to take testimony at a private hearing or at a public hearing unless at least two of its members, one of whom shall be an appointee of the governor and the other an appointee of either the temporary president of the senate or of the speaker of the assembly, are present at such hearing." It would therefore appear incontrovertibly clear that a grant of power in the exact words of the statute under consideration is not, according to the Legislature itself, a dispensation of the necessity for two members to be present. Respondent argues that where the Legislature intended to provide for the presence of two members it had done so. This argument overlooks the fact that in the statute creating and defining the powers of the Temporary State Commission something more than the requirements of the Civil Rights statute was added, and this necessitated the additional provision. It by no means follows that had the Legislature not qualified its grant of power its intent was to avoid the Civil Rights provision. At the very least, the resort to this argument shows the absence of a clear and unmistakable intent. Lastly, the respondent commission argues that the extent of the investigation directed to be conducted by it, the limited time in which the investigation must be conducted and the small number of commissioners, all of whom had other commitments, would make the attendance of two of them at every interrogation beyond the bounds of feasibility and effectually hamstring the investigation. To this strictly *ad hoc* argument is opposed the evil which the Civil Rights Law was designed to avoid. The alarming effect of uncurbed interrogation was, in 1954, only too evident. Since then the abuse of the investigatory power has not been manifested and the need for safeguards does not currently appear as a vital necessity. That is not to say that the need will never again arise, nor should the protection afforded by the legislative restriction be whittled away because on this occasion no infringement of basic rights has been indicated and expediency would be served by ignoring the protection. [70 Misc 2d 710.]