DIAMOND AUTO SALES, INC., et al., appellants, v. NORMAN ERBE, Attorney General, et al., appellees.

No. 50118.

(Reported in 105 N.W.2d 650)

1332

OCTOBER 18, 1960.

Henry Wormley and Anthony Critelli, of Des Moines, for appellants.

Norman A. Erbe, Attorney General, Carl H. Pesch, Assistant Attorney General, and Ray Hanrahan, County Attorney for Polk County, for appellees.

Brody, Parker, Miller, Roberts & Thoma, of Des Moines, for Iowa Automobile Dealers Association, amicus curiae.

THOMPSON, J.—The plaintiffs are used motor vehicle dealers operating businesses in the State of Iowa. Their petition alleges that chapter 243 of the Acts of the Fifty-eighth General Assembly, enacted April 2, 1959 and effective on July 4 following is void and unconstitutional, prays a declaratory judgment so holding and asks for injunctive relief against enforcement of its provisions. We set out chapter 243 herewith: "Sunday Sales of Motor Vehicles. Section 1. Section three hundred twenty-two point three (322.3), Code 1958, is hereby amended by adding thereto a new subsection as follows: 'No person licensed under this chapter shall, either directly or through an agent, salesman or employee, engage in this state, or represent or advertise that he is engaged or intends to engage in this state, in the business of buying or selling at retail new or used motor vehicles on the first day of the week, commonly known and designated as Sunday.' "

Plaintiffs' propositions relied upon for reversal are three: The Act is an arbitrary and unreasonable interference with plaintiffs' business and is in violation of section 1 of Article I of the Iowa Constitution; the law is not uniform in application and is discriminatory, in violation of section 6 of Article I of the Iowa Constitution and of the 14th Amendment to the Constitution of the United States; and it is too vague, uncertain and indefinite to be enforceable as a criminal statute. We shall discuss these in the order stated.

I. It is elementary that the courts have no concern with the wisdom, justice, policy or expediency of the enactments of the legislature and may not interfere because of any supposed lack of those elements in the legislation under attack. This freedom from lack of responsibility for what the legislature does is at times a comforting position for the judiciary, but it has no further significance here. The question we must determine is whether the lawmaking body acted within its constitutional powers.

Sections 1 and 6 of Article I of the Iowa Constitution are quoted:

"Freedom and equality—inalienable rights.

"Section 1. All men are, by nature, free and equal, and have certain inalienable rights—among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness.

"Laws of uniform operation—grant of privileges or immunities.

"Section 6. All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."

The material part of the 14th Amendment to the Constitution of the United States is likewise set out: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

II. It is section 1 of Article I, and the 14th Amendment, supra, which are relied upon by the plaintiffs in upholding their first ground for reversal. It is contended chapter 243, supra, is an unreasonable and arbitrary interference with their businesses and so is in conflict with Article I and the 14th Amendment. The record shows that the plaintiffs are all dealers in used, or secondhand, motor vehicles. Consequently we have no concern here with the application of the statute to new vehicles. A litigant will not be heard to attack the constitutionality of a statute unless his own rights will be infringed thereby. Browneller v. Natural Gas Pipeline Co., 233 Iowa 686, 692, 8 N.W.2d 474, 477, and citations. It follows that the plaintiffs here must rely upon a denial of their own rights rather than of those of dealers in new vehicles, or others.

The record shows that when House File 311, which was later enacted  as chapter 243, supra, was introduced, there was attached to it an "Explanation of House File 311", which appears

to be the legislative reasons for the law. We quote the explanation:

"Licensed motor vehicle dealers are prohibited by existing laws from selling motor vehicles which do not meet specific safety standards and they are required to furnish the purchaser, prior to delivery of the motor vehicle, certain legal documents that are peculiar to the trade. This bill would amend the motor vehicle dealers licensing law to protect the public:

"(1) from the hazards of driving in Sunday's highly congested traffic unsafe cars purchased from dealers on Sunday when mechanics are not on duty and state enforcement agents are not available for checking dealer lots; and:

"(2) from the risks of being involved in the improper sale of a motor vehicle due to the inaccessibility of essential legal documents on Sunday and, in some cases, protective liability insurance.

"Thus this bill would aid the commissioner of public safety in his enforcement of the existing motor vehicle laws."

The plaintiffs introduced evidence which they think showed the invalidity of the reasons given by the legislature. But before discussing this phase of the question it is appropriate to point out that we are not limited to those matters. If any reasonable state of facts can be conceived which will support the validity of the law, it is our duty to sustain it; and it is plaintiffs' duty to negative every conceivable basis for upholding it. Dickinson v. Porter, 240 Iowa 393, 400, 35 N.W.2d 66, 71; Eckerson v. City of Des Moines, 137 Iowa 452, 476, 115 N.W. 177, 187; McGuire v. Chicago, B. & Q. R. Co., 131 Iowa 340, 350, 108 N.W. 902, 905, 33 L. R. A., N. S., 706.

Other well-settled rules of constitutional law must be kept in mind. Regularly enacted laws are presumed to be constitutional, and this presumption must be overcome by one attacking a statute by proving its invalidity beyond a reasonable doubt. State ex rel. Cairy v. Iowa Co-Operative Association, 250 Iowa 839, 844, 95 N.W.2d 441, 443, and cases cited.

It is also established that the fact a law may work hardship does not render it unconstitutional. Steinberg-Baum

& Co. v. Countryman, 247 Iowa 923, 932, 77 N.W.2d 15, 20, and citations.

Turning then specifically to the attack on the questioned Act because it unreasonably and arbitrarily interferes with the businesses of the plaintiffs, we must determine whether the reasons given by the legislature, or any other conceivable state of facts, have been negatived by the plaintiffs by the required quantum of proof. Chapter 243 is unquestionably an attempted exercise of the police power of the state and must be sustained as such or overthrown as an arbitrary and unreasonable use of the power. The concept of this power has been broadened in later years.

We said, in Steinberg-Baum & Co. v. Countryman, supra, at page 930 of 247 Iowa, page 19 of 77 N.W.2d: "Formerly the police power was thought to be limited to measures that promoted merely the public health, safety or morals. Its scope is now generally recognized as much less restricted. It has repeatedly been held to include at least the promotion of prosperity and the general welfare." (Citing authorities) It is in the light of modern authority that we must consider the Act before us.

The legislature said the Act is needed because of the danger arising from driving motor vehicles purchased on Sunday when mechanics are not available. The plaintiffs' evidence shows that generally mechanics do not work on Sunday. They counter this, however, by evidence that they check all used cars coming to their lots and sell them only when they are put in good condition for safe driving. This, it seems to us, is a matter for the legislature to weigh. There is evidence that many prospective purchasers of used automobiles prefer to drive them a short distance before buying. Perhaps they choose to have them checked by mechanics of their own selection. In any event we cannot say the evidence of safety is so conclusive the legislature had no reasonable basis for its determination at this point.

The legislative conclusion that danger of fraud or mistake might arise in Sunday sales of used cars because county recorders' offices are not open so that title and liens can be checked

is likewise beyond our power to hold as an arbitrary and unreasonable basis for the Act. All dealers in either new or used motor vehicles are required to first procure licenses from the state. Section 322.3, Code of 1958. But this is not a complete guarantee against mistake, fraud or misrepresentation; at least we cannot hold the legislature has been proved to have been arbitrary and unreasonable in so concluding. Many vehicles are subject to conditional sales contracts, mortgages, or tax liens of record. The Sunday buyer has no opportunity to check this for himself; if the legislature thought he needs protection, it is beyond our power to say it could not afford it.

So with the question of protective liability insurance. It is the public policy of the state, as evidenced by the Motor Vehicle Financial Responsibility Act, chapter 321A, Code of 1958, that those who drive motor vehicles upon the highways of the state shall be able to respond in damages for the injuries they cause through negligent or reckless operation. Commonly, the owner of a vehicle protects himself and those whom he may injure by public liability insurance. If he does not do so, and he inflicts injuries for which he cannot pay, he is denied the right to operate until he furnishes evidence of financial responsibility. The legislature assumed liability insurance might not be readily available on Sunday, and we cannot say this assumption has been overcome by the plaintiffs beyond a reasonable doubt.

These considerations would in themselves require a holding that the Act is not an arbitrary and unreasonable regulation of plaintiffs' businesses. But other jurisdictions have found additional reasons for upholding similar legislation. It has been said that, because of the highly competitive nature of the business, the high price of the article being offered for sale and the limited number of buyers, the "unreasonable and competitive lust" of some dealers forces all to keep their places open every day of the week for long hours, and on Sunday; and this is thought to be inimical to the public welfare. Gundaker Central Motors, Inc. v. Gassert, 23 N. J. 71, 127 A.2d 566, 572, appeal dismissed for want of a federal question, 354 U. S. 933, 77 S. Ct. 1397, 1 L. Ed.2d 1533. This case was cited with approval in Tinder v. Clarke Auto Co., 238 Ind. 302, 149

N.E.2d 808, 815. The Indiana Supreme Court there added some observations of its own about the need of mankind for a day of rest at regular intervals. In both the Gundaker and Tinder cases the courts of last resort of New Jersey and Indiana respectively upheld statutes prohibiting the sales of either new or used motor vehicles on Sunday. The plaintiffs endeavor to distinguish the Gundaker case by pointing out that it does not prohibit sales on Sunday, but makes one who sells guilty of being a disorderly person and providing a criminal punishment. But the New Jersey court said the statute "in essence" prohibited dealing in cars on Sunday; and we agree no real distinction can be drawn between a statute which flatly prohibits Sunday sales and one which provides criminal penalties for such selling.

Other courts have found no constitutional bar to similar statutes. Irishman's Lot v. Cleary, 338 Mich. 662, 62 N.W.2d 668; Mosko v. Dunbar, 135 Colo. 172, 309 P.2d 581; Rosenbaum v. City and County of Denver, 102 Colo. 530, 81 P.2d 760; Stewart Motor Co. v. City of Omaha, 120 Neb. 776, 235 N.W. 332. Two jurisdictions have held to the contrary. McKaig v. Kansas City, 363 Mo. 1033, 256 S.W.2d 815, holds such a statute unconstitutional; but the Missouri Supreme Court specifically put its holding upon a peculiar provision of the state constitution which made the question of whether a statute or ordinance was a special or general one a judicial question. It pointed out that only three other states—Minnesota, Kansas and Michigan—have similar constitutional provisions, and therefore precedent from jurisdictions other than the three named were of little value. (Page 1036 of 363 Mo., 256 S.W.2d, pages 816, 817) At that time Irishman's Lot v. Cleary, supra, had not been decided in Michigan. It should be noted that even with the same constitutional provision which the Missouri court thought decisive, the Michigan Supreme Court, in the Irishman's Lot case, upheld the statute.

Florida has also stricken down a statute somewhat similar to the one under analysis here. This seems to have been on the ground of discrimination. Kelly v. Blackburn, Fla., 95 So.2d

260; Henderson v. Antonacci, Fla., 62 So.2d 5. We shall discuss this question in the division following.

III. The second ground stated for reversal by the plaintiffs is that the Act is not universal in its application and is discriminatory. In fact, the contentions that an Act is arbitrary and unreasonable and that it is discriminatory are often not greatly different. The plaintiffs seem to recognize this by their brief, which argues both propositions in the same division. An Act which is unreasonable and arbitrary is often so because it discriminates. In the case at bar it is urged that selling of used cars at retail is not different from other businesses such as those which sell furniture, groceries, cigarettes, Sunday papers, pets, which furnish taxicab or laundry service, as laundromats, travel bureaus, or which provide entertainment such as moving picture theaters or baseball games. This was the basis for the Florida Supreme Court's holding in Kelly v. Blackburn and Henderson v. Antonacci, supra.

But we think there is a clear distinction, and that it is pointed out by the reasons set forth in our discussion under Division II above. Thus, other businesses are not subject to the need for services of, or inspection by, a qualified mechanic. The danger of mistake or fraud arising from inability to check titles or liens is not generally present in other businesses; nor do they as a rule need the protection of public liability insurance. In Steinberg-Baum & Co. v. Countryman, supra, at page 935 of 247 Iowa, page 22 of 77 N.W.2d, we said:

"It is fundamental this constitutional provision [section 6 of Article I, supra] does not require that all laws shall apply alike to all citizens of the state. It is sufficient if a statute applies equally to all members of a class, provided the classification is not purely arbitrary but rests upon some reasonable basis. It is equally settled the legislature has wide discretion in determining the classes to which its Acts shall apply. Cook v. Hannah, 230 Iowa 249, 253, 297 N.W. 262, 265, and citations; Dickinson v. Porter, supra, 240 Iowa 393, 401, 35 N.W.2d 66, 72; Thomas v. State, 241 Iowa 1072, 1080, 1081, 44 N.W.2d 410, 414, 415."

The rule is thus stated in Dickinson v. Porter, supra,

pages 400, 401 of 240 Iowa, page 72 of 35 N.W.2d: "If there is any reasonable ground for the classification * * * and it operates equally upon all within the same class, there is uniformity in the constitutional sense and no violation of any constitutional provision invoked by plaintiff." Authorities in support are cited immediately following. Nor is it sufficient that the court may regard the reason for the classification as weak, or poor, or that the differences upon which it is based are not great or conspicuous. Dickinson v. Porter, supra, at page 401 of 240 Iowa, page 72 of 35 N.W.2d; 16A C. J. S., Constitutional Law, section 520, page 382.

So, although our Sunday "blue laws" have been repealed and citizens generally are permitted to carry on their businesses or vocations on that day without prohibition by our statutes, as plaintiffs point out, we think there is a sufficient basis for the classification made by the legislature in the Act here challenged to bring it within the protection of the foregoing rules. We cannot say it is discriminatory against retail dealers in used motor vehicles. We agree that the fact it applies to all such dealers is not alone sufficient to make it uniform and nondiscriminatory. We must consider it in relation to all others who may conduct businesses on Sunday; but we have pointed out above reasons why retail dealers in used vehicles may reasonably be put in a different class. There was sufficient basis for the legislative determination.

IV. Finally the plaintiffs say the Act is so vague and indefinite that it offends against the due process clauses of the Federal and State Constitutions. A criminal statute, such as chapter 243, supra, must be so sufficiently definite and explicit as reasonably and adequately to inform those affected what they may or may not do without incurring its penalties; it must state with reasonable exactness what is prohibited. But we do not find the Act is vulnerable to the attack made. Two cases which are cited following seem sufficient to demonstrate the general principles involved. These are State v. Coppes, 247 Iowa 1057, 78 N.W.2d 10, and United States v. Petrillo, 332 U.S. 1, 67 S. Ct. 1538, 91 L. Ed. 1877. In State v. Coppes Justice Bliss, for the court, made an exhaustive study of the subject, analyzing and

quoting at length from many decisions of other courts as well as our own. He stated the general principle that courts are reluctant to strike down legislative enactments, citing Sutherland, Statutory Construction, Second Ed., Volume 2, page 729. See page 1065 of 247 Iowa, page 15 of 78 N.W.2d. Also cited with approval is State v. Dvoracek, 140 Iowa 266, 271, 118 N.W. 399, 400, which considered the definiteness of our wife and child desertion statute, particularly the words "in a destitute condition." We said at page 1067 of 247 Iowa: "We apprehend that little difficulty will be experienced in ascertaining their meaning * * *. The situation of a person in a destitute condition is well understood, as are also the expressions with reference to maintaining or providing for wife and children. Said terms employed are as definite as in the nature of the offense were possible."

We cannot in the proper length of this opinion re-cite all the authorities collated in State v. Coppes, although many of them are pertinent to the subject under discussion. There, as here, the attack upon the statute asserted it was so vague and uncertain in its terms as not to be enforceable, but we upheld the Act.

The plaintiffs here cite many supposed situations in which the meaning of chapter 243 in their opinion would be uncertain. They ask, what is meant by engaging in business? Is the advertising of a car during the week and a viewing on Sunday at the car dealer's lot, even though no one was present to show it, a violation? If prospective buyers come on Sunday to the dealer's lot where the cars are on display and make their selection, when the dealer and his employees are not present, and then close the deal during the week, is the dealer guilty of engaging in business on Sunday? May a used car dealer wholesale ten cars on Sunday and so escape the statute? May a dealer advertise in the Sunday papers? Other possible situations are stated and questions concerning them posed. As to some, the answer is clear. Wholesaling is not prohibited by the statute, if it is genuinely such. We shall not attempt to go through the list of problems which the plaintiffs envisage, other than to say that most of them are unsubstantial and that in the case of almost

all statutes, criminal or otherwise, there will be found some areas which the courts must interpret. The great volume of law on statutory construction tells us this much.

As the United States Supreme Court said in United States v. Petrillo, supra, at pages 7, 8 of 332 U. S., page 1542 of 67 S. Ct.: "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. * * * The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."

Here we think is the true definition of what constitutes sufficient certainty. Certain terms, as "person", "selling", "at retail", and "motor vehicle" are defined in section 322.2 of the Code. Subsections 1 and 3 of section 322.2 refer to engaging in the business of selling motor vehicles at retail. They have been in effect in Iowa since 1937. It is held that terms will generally be upheld as sufficiently definite to avoid challenges of unconstitutionality if they have been in effect for many years. State v. Northwest Poultry & Egg Co., 203 Minn. 438, 281 N.W. 753, 755; Commonwealth ex rel. Woodruff v. American Baseball Club, 290 Pa. 136, 138 A. 497, 500, 53 A. L. R. 1027. So courts will favor the terms of a statute as against a challenge of uncertainty when they have been widely used in other legislative enactments. State v. Northwest Poultry & Egg Co., supra; Kneeland v. Emerton, 280 Mass. 371, 183 N.E. 155, 164, 87 A. L. R. 1. Plaintiffs' complaint is apparently chiefly directed against the meaning of "engage in business"; but the term has been used in other and related statutes for many years without successful challenge.

The Minnesota Supreme Court, in State v. Northwest Poultry & Egg Co., supra, at pages 440, 441 of 203 Minn., page 754 of 281 N.W., said:

"The uncertainty hit at is not the difficulty of ascertaining whether close cases fall within or without the prohibition of the statute, but whether the standard established by the statute is so uncertain that it cannot be determined with reason-

able definiteness that any particular act is disapproved. * * *

"Due process requires that penal legislation expressed in general and flexible terms furnish a test based on knowable criteria which men of common intelligence who come in contact with the statute may use with reasonable safety in determining its command."

Measured by this test, we think chapter 243 is not vulnerable to the criticism leveled against it. It would clearly not be possible for the Act to define every prohibited operation in minute detail, and it is not required that it do so. Men of common intelligence will know what it is to engage in business; and the fact that borderline situations may arise in which the applicability of the statute is questionable does not make it void. As the Pennsylvania Supreme Court remarked in Commonwealth ex rel. Woodruff v. American Baseball Club, supra, at page 143 of 290 Pa., page 500 of 138 A.: "It may be that those who do not wish to understand or abide by its provisions find them uncertain; surely those who wish to follow the custom of our people in Sunday observance do not so find the interdictions of the statute."

It is not to censure the plaintiffs to say that they do not wish to follow the provisions of the Act; their attack upon it was brought in the courts and entirely within their rights. But we must conclude the statute is sufficiently certain to meet constitutional requirements.

On the whole, we find no constitutional impediment to the enactment and enforcement of the Act here questioned. The decree of the trial court upholding it was right.—Affirmed.

All JUSTICES concur.