LEWIS CONSOLIDATED SCHOOL DISTRICT of Cass County and BOARD OF DIRECTORS, plaintiffs, v. PAUL F. JOHNSTON, State Superintendent of Public Instruction, and STATE BOARD, defendants; RILEY CLARK, intervenor.

No. 51226.

(Reported in 127 N.W.2d 118)

238

MARCH 10, 1964.

Richard C. Turner, of Council Bluffs, for appellants.

Evan L. Hultman, Attorney General, J. Robert Hard and Bruce M. Snell, Jr., Assistant Attorneys General, all of Des Moines, for appellees.

THOMPSON, J.—The defendants are the only factor constant throughout the proceedings before us in the present appeal. The plaintiffs are much diminished in number since the original action was commenced; the intervenor now appears as a plaintiff; and the issues and relief asked are greatly altered. In addition, one of the plaintiffs who prosecuted the final action in the trial court has declined to join in the appeal.

The suit was brought in the first instance by the Lewis Consolidated School District of Cass County, joined by its Board of Directors, as plaintiffs; Riley Clark, a resident and taxpayer of the district, intervened, making common cause with the plaintiffs. The petition alleged that the defendants, acting under the purported authority of Code section 257.18(13), threatened

to and would in fact remove the plaintiff school district from the list of approved schools as of July 1, 1962, and thereby terminate its right to share in the allocation of state funds to school districts; that section 257.18(13) is unconstitutional and the acts of the defendants thereunder were arbitrary and discriminatory and likewise in violation of constitutional provisions. The prayer was that the defendants be enjoined from removing the district from the approved list of schools; and that a writ of mandamus issue commanding the defendants to forthwith do all things necessary to keep the district on the list of approved schools entitled to share in the distribution of state funds. There was also a prayer for general equitable relief.

The case being at issue, trial began in late June of 1962. However, at the commencement of the trial it appeared that the district had by a three to two vote of its directors acquiesced in the demand of the defendants that it abandon its intention to offer instruction in the ninth grade, so that its curriculum would thenceforth include only teaching in the kindergarten through the eighth grade—"K through 8"—as the schoolmen state it. The defendants then announced, through Paul F. Johnston, superintendent of public instruction, that the district had been placed upon the approved list of schools; and the plaintiff school district directed its counsel to dismiss the action.

Thereupon two of the directors who were plaintiffs, and the intervenor, asked permission to amend the petition to ask for declaratory relief; in effect making the same charges of unconstitutionality of the statute and the acts of the defendants in administering it. This permission was granted by the court, the amendment was filed, with the intervenor appearing therein as a plaintiff together with the two dissatisfied directors; and the case proceeded to further trial at a later date. The trial court upheld the statute and the acts of the defendants, and denied relief to the plaintiffs. Lloyd Weppler, one of the original plaintiffs, and the former intervenor, now plaintiff Riley Clark, have appealed to this court. They assign three errors: 1, failure of the trial court to hold section 257.18(13) unconstitutional on the grounds asserted; 2, failure to find discrimination and lack of uniform application in the standards

adopted by the defendants; and 3, failure to find discrimination and lack of uniform application in the administration of the standards and of the statute, and failure to find that the state superintendent of public instruction has used and is using his powers and discretion in an arbitrary and capricious manner.

I.   First we are faced with a challenge to the right of the present plaintiffs to prosecute the action for a declaratory judgment. The defendants now assert two related claims: that no declaratory-judgment action lies, because there is shown no justiciable controversy; and that the plaintiffs have shown no actual injury to themselves and so have no standing to raise the constitutional questions they have attempted to assert. They say that for these reasons there is no jurisdiction in the courts to determine the questions involved. It is doubtful if these questions were presented to the trial court; at least its findings of fact and conclusions of law are devoted solely to the merits of the constitutional issues raised.

In any event, we think the defendants' position unsound. It should be observed that the then counsel for the defendants apparently acquiesced in the amendment which changed the nature of the action to one for a declaratory judgment. After the request to permit amendment had been made by the remaining plaintiffs, the trial court indicated it was of the opinion such permisson was "purely within the Court's discretion." It then said: "I would see nothing wrong with that, Mr. Turner, and my thought has always been that you would have that right. Now maybe I am wrong, Mr. Rehmann?" (Mr. Rehmann was the trial counsel for the defendants.) Mr. Rehmann replied: "That's correct, Your Honor."

While it would be possible to interpret this last-quoted rejoinder, in view of the court's immediately preceding statement, as meaning "That's right, you're wrong", we do not so construe it. It was defense counsel's apparent express agreement that the court had discretion to permit the amendment, and the defendants are not now in a strong position to assert the court was wrong.

We think also the merits of the question require an affirmative holding that the court did not abuse its discretion.. The

record shows that the remaining plaintiffs, who asked declaratory relief, were residents, voters and taxpayers in the school district. Two of them were members of the school board. While the immediate cause of the trouble, the requirement of the defendants that the board eliminate its ninth grade under pain of removal from the approved list, had been removed by the surrender of the board, it also appears that the defendants had been of the opinion the district should not attempt to maintain any grades beyond the sixth. A possibility of further controversy over this matter, and others, appears. Removal of the district from the list of approved schools would certainly affect the plaintiffs as taxpayers.

The declaratory-judgment rules, R. C. P. Nos. 261–266, are to be construed liberally to carry out their purpose. We quoted with approval in Ostrander v. Linn, 237 Iowa 694, 701, 22 N.W.2d 223, 227, from Aetna Casualty & Surety Co. v. Quarles (4 C. C. A.), 92 F.2d 321, 324: "We think that this discretion should be liberally exercised to effectuate the purposes of the statute and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations * * *." See also Borchard, Declaratory Judgments, 101; and Katz Investment Co. v. Lynch, 242 Iowa 640, 647, 47 N.W.2d 800, 804, 805, and citations.

Attention should also be called particularly to rule 262, where it is said: "Any person * * * whose rights, status or other legal relations are affected by a statute * * * may have determined any question of the construction or validity thereof or arising thereunder, and obtain a declaration of rights, status or legal relations thereunder." It may not be denied that the plaintiffs, as residents, electors and taxpayers in the school district which has been compelled under threat of losing state tax moneys to alter its curriculum are affected by the challenged statute here, and it would seem beyond argument that they are entitled to "have determined any question of the construction or validity thereof", as the exact language of the rule provides.

This also answers the contention that the plaintiffs have not shown they are injured by the statute and so may not challenge it. In the first place, rule 262, supra, gives them the

right to have it construed; in the second place they have been injured by it. Their rights and legal relations have been affected by the statute; as they think to their detriment. It is true there must be shown there is a justiciable controversy rather than a mere abstract question. McCarl v. Fernberg, 256 Iowa 93, 95, 126 N.W.2d 427, 428; Wesselink v. State Department of Health, 248 Iowa 639, 643, 80 N.W.2d 484, 486; Melsha v. Tribune Publishing Co., 243 Iowa 350, 353, 51 N.W.2d 425, 427. But the jurisdiction of the court is not abrogated because the plaintiff may not be entitled to a favorable decree; it is sufficient that a right to a declaratory judgment is shown even though it may be adverse to the one asking it. McCarl v. Fernberg, supra, loc. cit. 256 Iowa 93, 96, 126 N.W.2d 427, 428; Wright v. Thompson, 254 Iowa 342, 355, 117 N.W.2d 520, 528.

It has been said by eminent authority that declaratory-judgment actions are peculiarly appropriate in controversies between the citizen and the state. In Ostrander v. Linn, 237 Iowa 694, 707, 708, 22 N.W.2d 223, 230, we quoted with approval from an article by Professor Borchard in 52 Yale Law Journal, 445, 446:

"Possibly in no branch of litigation is the declaration more useful than in the relations between the citizen and the administration. With the growing complexity of government and the constantly increasing invasions of private liberty, with ever widening powers vested in administrative boards and officials, the occasions for conflict and dispute are rapidly augmenting in frequency and importance. * * *

"By the construction placed upon declaratory actions in many jurisdictions the individual, threatened by the imposition of governmental demands and requirements * * * may put to the test the legality of the restriction without risking the penalties of disobedience or the hazards and expense of injunction."

A related rule, relied upon by the defendants, is that no one may question the constitutionality of a statute unless he can show that he is injured by it. Iowa Hotel Association v. State Board of Regents, 253 Iowa 870, 881, 114 N.W.2d 539, 545; Diamond Auto Sales, Inc. v. Erbe, 251 Iowa 1330, 1334, 105 N.W.2d 650, 652. But we have pointed out above that the plaintiffs are citizens and taxpayers in the school district; that the

defendants have compelled the district to abridge its school grades under threat, in fact an order, of withholding state funds; that complaint has also been made by them of the inclusion of two other grades, the seventh and eighth, in the present curriculum; and the refusal of the defendants to permit the teaching of the ninth and tenth grades will cause the district, and its taxpayers, to expend additional funds in tuitions to other schools. We think this sufficient to show an existing justiciable controversy and that the plaintiffs have a present interest and are injured by the enforcement of the statute attacked and the acts of the defendants thereunder.

II. We come then to the merits of the controversy. Section 257.18 defines certain duties and responsibilities of the state superintendent of public instruction. The challenged paragraph is 257.18(13), which we set out:

"Responsibilities of superintendent. It shall be the responsibility of the state superintendent of public instruction to exercise all powers and perform all duties hereinafter listed; provided, in those categories where policies are to be initiated by the superintendent and approved by the state board, such policies are to be executed by the superintendent only after having been approved by the state board.

"* * *

"(13). Formulate standards, regulations, and rules, subject to the approval of the state board, for the approval of all schools and public junior colleges under his supervision; subject to the approval of the board remove for cause, after due investigation and notice, any such school failing to comply with such approval standards, rules, and regulations from the approved list; which removal shall, during the period of noncompliance, make such school ineligible for participation in the state distributive funds, and the collection of tuition from nonresidents from other districts which do not maintain approved high schools."

The first and most important attack upon the statute is based upon the allegation that it is an improper delegation of legislative power and authority, in violation of Article III, section 1, of the Iowa Constitution. We quote this section: "The powers of the government of Iowa shall be divided into three

244

·separate departments—the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted."

██ ██ The plaintiffs' contention at this point is based upon the thought that the statute does not set up any proper or sufficient standards to guide the defendants; that it permits the superintendent, with the approval of the board, to set up arbitrary and discriminatory standards, rules and regulations with no guidelines therefor. In considering this question, we are of course ·bound to follow certain well-settled rules, which are pointed out to us by the defendants and of which we are well aware. So we must presume constitutionality, and this presumption must be overcome by one who challenges the statute by proving its invalidity beyond a reasonable doubt. Also, if any reasonable state of facts can be conceived which will support the constitutionality of the statute, it is our duty to sustain it; and the attacker must negative every such possible hypothesis. Diamond Auto Sales, Inc. v. Erbe, supra, loc. cit. 251 Iowa 1335, 105 N.W.2d 652.

██ The defendants do not seriously contend that section 257.18(13), standing alone, would not be vulnerable to the constitutional challenge. By itself, it sets up **no standards, but** gives the superintendent, with the approval of the board, an unfettered discretion to make any standards, rules and regulations he may deem advisable. But they say this statute must be read with others, which they think are in pari materia and so must be read and construed with it. With this contention we agree.

The school laws of Iowa are extensive, and many of them relate to the same subject matter under consideration here. So, if any other of such laws set up sufficient standards and guides, they will remedy any defects in the particular section attacked. As to the rule of pari materia, see Fitzgerald v. State, 220 Iowa 547, 555, 260 N.W. 681, 684; Drazich v. Hollowell, 207 Iowa 427, 429, 223 N.W. 253, 254 ("All acts relating to the same thing or to closely allied subjects should be given consideration.");

State v. Zellmer, 202 Iowa 638, 210 N.W. 774, 775 ("The section is a part of the fish and game laws of the state, all of which, so far as in pari materia, should be considered, in arriving at the intent of the legislature in its enactment.") ; Story County v. Hansen, 178 Iowa 452, 453, 159 N.W. 1000 ("If the proper occasion for construction arises, statutes on the same subject shall be considered with reference to each other").

So we turn to the other statutes relating to school government and its supervision by the state superintendent and the department of public instruction, to determine if any sufficient guides to the administrative officers may be found.

III. The defendants cite and rely upon several statutes pertaining to the government of the school system and, in particular and necessarily, the allocation of public funds to the various districts. There is no real question that the policies initiated by the superintendent must be approved by the board, and we consider the matter as though his acts, standards, rules and regulations are in fact those of the board.

Chapter 293, called to our attention by the defendants, does not aid them. It is limited by its terms to "Any school located in a district, other than a city independent or consolidated district, not maintaining a high school". See section 293.1. The Lewis district is a consolidated district, and the major point of contention was whether it might maintain a ninth grade, which is a high-school grade. It had been maintaining such a grade, but was compelled to drop it. Section 293.2 prescribes minimum requirements for approval as a standard school, which are sufficiently detailed, except it closes with "and such other requirements as he may deem necessary." This seems to bring it within the objectionable lack of standards which we shall later point out in connection with section 257.18(13).

Chapter 285 deals with state aid to transportation and is quite detailed as to the necessary requirements. Section 285.1, subsection 14 says: "The state superintendent of public instruction may review all transportation arrangements to see that they meet all legal and established uniform standard requirements." The standards are fixed in other sections of the chapter; the

superintendent may determine only whether the standards are met.

Chapter 286 is definite and precise as to the requirements which school districts must meet, and the basis for allocating, state aid. Definite formulas are set forth. Again, chapter 286A is definite as to the basis for allocating aid from state funds; and the state superintendent, subject as always to the approval of the board, is authorized to "adopt such rules and regulations and definitions of terms as are necessary and proper for the administration of this chapter." Section 286A.6. Here is a proper application of the right to make rules and regulations. The standards are definitely set in the chapter. The general effect of these chapters is to emphasize the lack of any standards to govern section 257.18(13). The standards set up in chapters 285, 286 and 286A are not applicable to and furnish no guide for the subject matter of section 257.18(13).

Chapter 280 gives the board of directors of the school districts the right and duty to prescribe courses of study, section 280.1; subject, however, to the specified requirements of section 280.3, which requires that certain subjects be taught; and of 280.17, which says the course of study shall be subject to the approval of the state board. Again the standards are sufficiently fixed.

Section 257.18(12) provides that the superintendent shall "Ascertain by inspection, supervision, or otherwise, the condition, needs, and progress of the schools under the supervision of his department and make recommendations to the proper authorities for the correction of deficiencies and the educational and physical improvements of such schools * * *." Probably the best support for the defendants' position is found in section 257.9, which we quote:

"General powers and duties of board. The state board shall exercise the following general powers and duties:

"1. Determine and adopt such policies as are authorized by law and are necessary for the more efficient operation of any phase of public education.

"2. Adopt necessary rules and regulations for the proper enforcement and execution of the provisions of the school laws.

"3. Adopt and prescribe any minimum standards for carrying out the provisions of the school laws.

"4. Perform such duties prescribed by law as it may find necessary for the improvement of the state system of public education in carrying out the purposes and objectives of the school laws."

We are here faced with a determination as to whether a statute which gives to the state board the powers above set out is sufficient warrant for the imposition of a set of standards, 71 in number in the instant case, a violation of any part or all of which will permit the department to deprive the offending school district of its share of state school funds. All the last quoted statute seems to do is to give the superintendent, with the approval of the board, unlimited authority to do whatever he deems best in furthering the educational interests of the state. He may "adopt such policies as are authorized by law"; he may adopt rules and regulations for carrying out the provisions of the laws, and prescribe any minimum standards therefor. Is it sufficient that an administrative officer, or body, be given power to do whatever is thought necessary to carry out their purposes and to enforce the laws, without other guide than that they must keep within the law? We think something more is required.

We are cognizant of the importance of education; and of the fact that it is impossible for the legislature to spell out in exact detail every item which an administrative body must follow. We have said that "Our mode of life has become so complex that many boards, administrative agencies and departments have been created to render proper governmental service to our citizenry. The details involved in this service are so numerous, complicated and changeable that for the legislature to enact them in detail would not only be impractical, but impossible." Wall v. County Board of Education, 249 Iowa 209, 228, 86 N.W.2d 231, 242. We also know that the trend of modern decisions is to liberalize the setting of standards and to require less exactness in regard to them in legislative enactments. But where standards or guidelines are readily possible we think the legislature may not abandon them altogether, and say in effect

to the administrative body: "You may do anything you think will further the purpose of the law: in so doing you may set up whatever standards you deem necessary and you may punish for violation of those standards."

Perhaps the most efficient form of government is an intelligent and benevolent dictatorship. But, passing the point that such dictatorships rapidly lose their intelligence and benevolence, we must observe that it is not the kind of government provided for by our Constitution. Some check must be put upon administrative bodies; they must be required to follow some sort of pattern designed by the legislature. The law-making body may not entirely abrogate its functions, and surrender them to administrative officials.

If we are to have a constitutional government, we must adhere to the constitutional processes provided for it. It is the declared policy of the school statutes "to encourage the reorganization of school districts into such units as are necessary, economical and efficient and which will insure an equal opportunity to all children of the state." Section 275.1, Code of 1962. This is a desirable goal; but it must be reached by laws and procedures which do not transgress the Constitution. The end does not always justify the means; in fact it never does, if constitutional precepts must be disregarded to reach it. Nor will we torture the Constitution out of any fair construction or meaning to promote or permit what may be thought to be a beneficial result. More harm will come from such procedure, which in effect sets aside basic safeguards, than will be gained by the supposed desirable end to be achieved beyond the Constitution in the particular case.

In Goodlove v. Logan, 217 Iowa 98, 101, 251 N.W. 39, 40, we struck down, as an improper delegation of legislative power, a section of the Code which gave to the state highway commission power to "establish rules and regulations and issue orders relative to the use of primary roads" relating to paragraph "3. The stopping of vehicles on the paved portion of the roadway, * * *." In State v. Van Trump, 224 Iowa 504, 505, 275 N.W. 569, the state conservation commission was empowered by then section 1703-d12, subsection 5, to: "Adopt rules and regulations sub-

ject to the approval of the executive council for the propagation, the protection, the trapping, hunting* * * [of certain fish, birds and animals] the protection of which may be advisable * * * whenever, after investigation, such regulations shall be desirable for the proper use and conservation of the resources of the state." Compare this with section 257.9(1), supra, which provides for the state board to adopt such policies as are necessary for the more efficient operation of any phase of public education; and with section 257.10(12), which permits the board to prescribe such standards as are required by law or recommended by the state superintendent "in accordance with law, *and as it may find desirable to aid in carrying out the provisions of the Iowa school laws.*" (Italics supplied.) We held the statute unconstitutional in State v. Van Trump, supra; we can do no less with section 257.18(13). See also Bulova Watch Co. v. Robinson Wholesale Co., 252 Iowa 740, 747, 108 N.W.2d 365, 369, 370, where we approved the holdings in the Goodlove and Van Trump cases, and followed them. In point also is School District No. 39 of Washington County v. Decker, 159 Neb. 693, 700, 68 N.W.2d 354, 359, 360. There the Nebraska Supreme Court in a situation much like the one before us here quoted with approval and followed from 42 Am. Jur., Public Administrative Law, section 45, page 342: " '* * * A statute which in effect reposes an absolute, unregulated, and undefined discretion in an administrative body bestows arbitrary powers and is an unlawful delegation of legislative powers. The presumption that an officer will not act arbitrarily but will exercise sound judgment and good faith cannot sustain a delegation of unregulated discretion.' "

IV. We have approved the defendants' contention that other statutes in pari materia with section 257.18(13) are to be considered in determining its validity; which means whether they may supply the lack of any standards or guides found in that section. But it is of the greatest importance to ascertain whether the legislative intent to make standards set up in other sections of the school laws applicable to section 257.18(13) appears. We have indicated above we do not find such intent.

The total amount of state aid available to the schools of

Iowa for the year from July 1, 1962 to June 30, 1963, inclusive was in the amount of approximately $30,000,000. The Lewis district's share of this, while not specifically stated, was without doubt substantial. If the state superintendent, subject only to the approval of the state board, is to be given the power to deny this aid to this school, or to any school, because of violation of standards or rules and regulations made by him, we think more definite guides to the making of such standards and rules should be provided. As it stands, it is only necessary that they be such as are required by law and the board "may find desirable to aid in carrying out the provisions of the Iowa school laws", section 257.10(12); or as it may find authorized by law "and are necessary for the more efficient operation of any phase of public education", section 257.9(1); or it may "Adopt necessary rules and regulations for the proper enforcement and execution of the provisions of the school laws", section 257.9(2) and "Adopt and prescribe any minimum standards for carrying out the provisions of the school laws", section 257.9(3). The drastic punishment provided for a school district which fails to meet a standard or transgresses a rule or regulation, as authorized by section 257.18(13) calls for something more certain than this. The superintendent and the board are left to their own interpretation of what is needed and proper in carrying out the provisions of the school laws, with full authority to inflict severe penalties upon a district which disagrees with them.

V. The failure of the statute to provide any sufficient guides is pointed up by the manner in which the superintendent and the board have implemented it. Exhibit O in the record is denominated "Circular No. 100a (Revised)"; is labeled "Standards for the Approval of School Districts"; and further on the title page "Pursuant to authority conferred upon the State Board of Public Instruction by provision of section 257.10(12), Code of Iowa, the standards described within shall govern the approval of school districts as provided in section 257.18(13), Code of Iowa." The board's reliance upon section 257.10(12) in fixing its standards is clearly evident.

In the body of the circular are 71 standards which the board has considered necessary to be met in order that a school may

qualify for state aid. They are long and involved and cannot be set out here. The board has evidently taken that part of section 257.10(12), quoted above, literally, and has set standards which it finds "desirable" to aid in carrying out the edicts of the school laws. However "desirable" they may be, it is evident the board in pronouncing them has acted on its own idea of what the word means rather than by following any guides set by the legislature in any statute.

As an example of the belief of the board, and the superintendent, in their own unlimited powers at this point, we refer to a part of Standard 40: "In reaching its decision regarding the approval of the elementary- or secondary-school educational program or course of study offered by each school district, the State Board will base its judgment on the degree to which progress is being made toward implementing the courses of study which are set out in this standard provided that, when parts of this standard which are not being completely met are waived, the deficiencies shall be set forth and such waiver shall be in effect for a stated period."

Testimony of Mr. Paul F. Johnston, the state superintendent, shows that the standards have been applied in some cases, in others waived, and in others their application has been deferred. This is in accordance with the part of Standard 40 set out above. The board has enforced the standards when it seemed "desirable", and on the same consideration has waived them on other occasions. We do not criticize the superintendent or the board for this.; they believed they were acting under the unlimited and unbounded authority given them by the statute. But their acts were not within constitutional limitations. A statute which gives an administrator the right to enforce or waive penalty at his discretion confers upon him an arbitrary and discriminatory power, which he may exercise in one case and ignore in another. Such a statute and the acts of the administrator under it are each unconstitutional. Central States Theatre Corporation v. Sar, 245 Iowa 1254, 1265, 66 N.W.2d 450, 456; and see Spurbeck v. Statton, 252 Iowa 279, 284–286 inclusive, 106 N.W.2d 660, 663, 664.

VI. It is our conclusion that section 257.18(13) violates

Article III, section 1, of the Iowa Constitution, and the plaintiffs are entitled to a decree so declaring.—Reversed and remanded for decree.

All JUSTICES concur except SNELL, J., who takes no part.