Manhattan Bridge Three-Cent Line, Respondent, *v.* The City of New York, Appellant.

Second Department, January 5, 1923.

Municipal corporations — action to secure declaratory judgment as to rights of parties under franchise granted with privilege of renewal — franchise granted for ten years with privilege of fifteen years more — revaluation to be had at expiration of first period — proceedings for revaluation not governed by Greater New York charter, §§ 72, 73 and 74 — determination of revaluation not fixed by resolution of board of estimate and apportionment fixing date for preliminary hearing and directing publication of petition — failure of city to appoint appraiser pursuant to contract did not waive that provision — where no agreement made at expiration of franchise company is required to continue at old rate.

In an action to secure a declaratory judgment as to the rights of the parties under a franchise granted by the city of New York to the plaintiff for ten years with privilege of renewal for fifteen years more, proceedings for the determination of a revaluation for the renewal period are not governed by the provisions of sections 72, 73 and 74 of the Greater New York charter.

A resolution of the board of estimate and apportionment, passed after the franchise committee had made a report and prepared a proposed agreement fixing the compensation to be paid by the plaintiff for the renewal period, which fixed the date of a preliminary hearing on the plaintiff's petition and directed the publication of the petition in the *City Record* and in two daily newspapers, did not grant to plaintiff the right set forth in the proposed contract then before the board and determine the revaluation for the renewal period.

The failure of the defendant to appoint an appraiser pursuant to the original contract, who was to be appointed in case the parties failed to agree, did not abrogate that provision in the contract and relieve the plaintiff from compliance therewith, for the contract further provided that if in any case the annual rate should not be fixed prior to the termination of the original term of the contract, then the plaintiff should pay the annual rate theretofore prevailing until the new rate should be determined.

The plaintiff must, therefore, continue to pay to the defendant the annual rate theretofore prevailing until a new rate shall be determined in the manner provided in the contract.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 6th day of July, 1922, upon the decision of the court rendered after a trial at the Kings Special Term.

*Joseph A. Devery* [*John P. O'Brien, Corporation Counsel,* and *Alex. I. Hahn* with him on the brief], for the appellant.

*Almet Reed Latson,* for the respondent.

YOUNG, J.:

The action was instituted under section 473 of the Civil Practice Act. The evidence in the case is entirely documentary, and only questions of law are involved. The admitted facts are substantially as follows:

By contract dated July 10, 1912, the board of estimate and apportionment of the city of New York granted a franchise to the plaintiff company to construct, maintain and operate a street railroad in and through certain streets of the city and over the Manhattan bridge. This contract is made part of the answer. The franchise was later amended by two contracts, neither of which affect the questions at issue. The term of the franchise was limited and fixed by section 4, subdivision 1, of the contract of July 10, 1912, to ten years with a privilege of renewal for an additional fifteen years upon the application of the company, upon a fair revaluation of the franchise.

It is provided that if the company should determine to exercise its privilege of renewal, it should apply to the board not earlier than two years nor later than one year before expiration of the original term; that revaluation should be sufficient if agreed to in writing by the company and the board; that if not agreed to one year before such expiration, the annual rate of compensation for the succeeding fifteen years should be reasonable, and that either the city or the company should be bound upon request of the other to enter into a written agreement fixing such reasonable compensation, and that if parties should not forthwith agree thereupon, they should enter into a written agreement fixing such compensation as shall be determined by appraisers to be appointed and to proceed as therein provided. It is, however, provided that the annual rate of compensation to be fixed either by agreement or by the appraisers should in no case be less than the sum required to be paid during the last year of the original term.

The original term of the plaintiff's franchise being due to expire on July 10, 1922, the plaintiff made application for a renewal on or about December 18, 1920.

Its amended petition of December 18, 1920, was presented to the board of estimate and apportionment at its meeting of January 7, 1921, and was referred to the franchise committee of the board for the purpose of inquiry and investigation into the matter of compensation to be paid by the plaintiff. After some investigation by the franchise committee and some negotiations between it and the plaintiff, a report was prepared by the committee, and also a form of proposed agreement, fixing the compensation for the renewal period. This report and form of agreement were presented to the board at its meeting of June 10, 1921. Upon the presentation of the report and form of agreement, the board adopted a resolution fixing a preliminary hearing on the petition for July 1, 1921, and directing the publication of the petition in the *City Record* and in two daily newspapers, to be designated by the mayor, following the procedure fixed by sections 72, 73 and 74 of the city charter,* which the defendant contends applies to all grants of franchises and renewals thereof. Pursuant to this resolution, a preliminary hearing on the petition was held on July 1, 1921, and the report of the franchise committee, together with the form of agreement, taken up for preliminary consideration. The defendant claims that no resolution approving this form of agreement, or authorizing its execution by the mayor, was adopted at the meeting of July 1, 1921.

The secretary of the board submitted the corporation counsel's approval of the form of the proposed contract; the board then adopted a resolution fixing Friday, September 30, 1921, as the date for a final hearing, and directing the publication of the form of contract and resolution consenting thereto, and also of notice of the hearing in the *City Record*, and also directing the publication in the two daily newspapers previously used, of notice of the hearing and notice of the place where copies of the proposed contract and consenting resolution could be obtained.

On September 30, 1921, the hearing fixed by the resolution of July 1, 1921, was held and closed, after which the board laid the matter over without action until November 11, 1921. Consideration of this matter was subsequently adjourned on various dates, to February 10, 1922.

---

* See Greater New York charter (Laws of 1901, chap. 466), §§ 72, 73, as amd. by Laws of 1905, chap. 629; Id. § 74, as amd. by Laws of 1905, chaps. 629, 630, and repealed by Laws of 1914, chap. 467; Id. § 74, as added by Laws of 1914, chap. 467.— [Rep.

Under date of December 31, 1921, the plaintiff presented to the board a communication with two forms of agreement, executed by the plaintiff. One of these was the agreement in regard to which hearings had been held by the board on July 1, 1921, and September 30, 1921. In this communication the plaintiff expressed the view that the board had already approved that contract, but that if the board did not concur in that view and determined that no revaluation had been agreed upon, plaintiff submitted duplicate copies of an agreement executed by the company fixing the annual compensation at such amount as should be reasonable and also appointed an appraiser.

On or about February 7, 1922, the plaintiff instituted this action. Meanwhile, the consideration of the matter by the board of estimate and apportionment was adjourned from February 10, 1922, to March 10, 1922, on which date the board of estimate laid the matter over for an additional two weeks, until March twenty-fourth, and requested the corporation counsel to advise the board before such adjourned date as to the procedure to be taken in case of arbitration and what instruments, if any, it was necessary for the board to have executed. On March 24, 1922, the opinion of the corporation counsel was presented, setting forth the procedure to be followed by the board in connection with the appointment of appraisers, and presenting also to the board a form of agreement to be submitted by it to the plaintiff as a necessary preliminary to the appointment of such appraisers. The matter was then referred by the board to its committee of the whole.

The complaint alleges that the plaintiff has performed all the terms and conditions of the contract on its part to be performed, but that the defendant has failed to authorize the signing of either the proposed contract or to appoint an appraiser, by reason of which " it has become advisable to request this court to make a declaration of the rights of the parties and the nature of the relief to which plaintiff may be entitled."

Plaintiff then demands judgment that the court construe the legal rights and relations of the parties arising out of the contract with respect to the following matters:

(1) Whether the determination of the revaluation of the grant, or franchise, for the renewal period, as embodied in the proposed contract first mentioned, has been agreed upon within the meaning of the subsisting contract between the parties.

(2) Whether the plaintiff has not become obligated to enter into such contract.

(3) Whether the defendant has not forfeited its right to enter into the contract subsequently proposed by plaintiff.

(4) Whether, under the provisions of the subsisting contract between the parties, the right of the defendant to appoint a disinterested freeholder as an appraiser to act on its behalf has not been forfeited.

The defendant denies that plaintiff has performed all the conditions of the contract or that it has become advisable to request the court to make a declaration of the rights of the parties, and as a separate defense alleges that the defendant has performed all the terms and conditions on its part to be performed in or about the said contract of July 10, 1912.

The judgment is based upon the following conclusions of law:

That the plaintiff is entitled to a judgment determining, construing and declaring the legal rights and relations of the parties hereto with respect to the said contract of July 10, 1912, as amended, and the proceedings for the renewal thereof as follows:

1. That the proceedings for the determination of a revaluation for the renewal period were not governed by the provisions of sections 72, 73 and 74 of the city charter.

4. That the determination of the revaluation was made and agreed upon within the meaning of the contract and became fixed and absolute upon the adoption by the board of estimate of its resolution of July 1, 1921.

5. That any and all proceedings taken by the defendant after July 1, 1921, were wholly unnecessary and of no force and effect.

6. That the failure of the defendant to appoint an appraiser pursuant to the contract of July 10, 1912, constituted a waiver of such provision of the contract, and such provision was thereby abrogated and the plaintiff was and now is absolved from compliance therewith.

7. That no consequential relief is necessary for the enforcement of the legal rights and relations of the parties thereto.

9. That the plaintiff is obligated to pay during the renewal period of the contract an annual sum equal to five per cent of its gross annual receipts, with a minimum of $7,000.

I am of the opinion that the first conclusion of law is correct.

The corporation counsel upon the trial stated as follows: " The City does not contend that the option is any additional grant. We concede that they got their right to fifteen years term from the original franchise." There is a finding to this effect at defendant's request. The appellant's brief states: " The only question at issue is as to whether the compensation to be paid by the plaintiff for the renewal term has been fixed." Still, appellant contends that sections 72, 73 and 74 of the city charter apply to the proceedings for the determination of the revaluation for the renewal

period. Section 74 provides as follows: " This act shall apply to any renewal or extension of the grant or leasing of the property to the same grantee, or to others," and appellant argues that what plaintiff sought was a renewal of the original grant and so subject to the provisions of the charter mentioned. Respondent, on the other hand, contends that it was not asking for a grant, but was merely exercising a right to renew already given by the original contract which in terms granted a ten-year franchise and the right of renewal for fifteen years more; that the original grant was made after full compliance with charter provisions and all that was necessary under that grant, when it exercised its right to renew, was a revaluation of the property.

It is clear that section 73 of the charter contemplates the granting of a franchise for a period not longer than twenty-five years. It is as follows:

" § 73. * * * no franchise or right to use the streets, avenues, * * * or highways of the city shall be granted * * * to any person or corporation for a longer period than twenty-five years, * * * but such grant may, at the option of the city, provide for giving to the grantee the right on a fair revaluation or revaluations to renewals not exceeding in the aggregate twenty-five years. * * * The grant or contract shall also specify the mode of determining the valuation and revaluations therein provided for."

It seems to me that inasmuch as the original grant gave plaintiff the absolute right to the additional fifteen-year term, there is no reason for the complying with the provisions of the charter referred to in this matter. The plaintiff having exercised its option, the only question to be determined is the compensation to be paid. The term " renewal " as used in section 74, I think refers to a renewal or extension beyond the terms of the original grant.

With the propositions as found in the court's fourth conclusion of law, I am unable to agree. Here we meet the vital issue in the case. The proceedings which led up to this meeting have been referred to in the statement of facts. The respondent contends that this resolution in terms granted to it the rights set forth in the contract before the board of estimate and apportionment, at that time, and fixed the revaluation because the resolution stated that the rates and charges were to be as specified and set forth in said contract.

I fail to see the force of this argument. It seems to me plain that there was no determination as to rates and valuations made by any resolution passed on this date. The resolution, after certain preambles, continues: " Now, Therefore, Be It Resolved, that the

following *form of resolution* for the consent or right applied for by the Manhattan Bridge Three Cent Line, containing the following *proposed form* of contract, for the grant of such right be hereby introduced and entered in the Minutes of this Board as follows, to wit:  *  *  * "   Then follows the proposed form of resolution and contract.

The language claimed by respondent to effectuate a determination as to rates and value is contained in this proposed form of resolution and nowhere else.

The resolution further states that these preambles and resolutions, after the same shall be entered in the minutes of this board, shall be published in full for at least fifteen days prior to Friday, September 30, 1921, in the *City Record,* together with the following notice:

" Notice Is Hereby Given that the Board of Estimate and Apportionment *before authorizing any contract* for the grant of the consent or right applied for by the Manhattan Bridge Three Cent Line and fully set forth and described in the foregoing form of proposed contract for the grant of said consent or right and *before adopting any resolution* authorizing such contract will, at a meeting of said Board to be held in Room 16, City Hall, Borough of Manhattan, City of New York, on Friday, September 30, 1921, at 10:30 A. M., hold a public hearing thereon at which citizens shall be entitled to appear and be heard."

This seems to me to be entirely plain, yet the court below has found that this form of resolution, inserted for purposes of publication and with the express declaration that before any contract would be authorized or consent given, a hearing would be held on September 30, 1921, constituted an agreement between the parties as to revaluation.  The resolution, in my opinion, will not bear such a construction.

Nor do I think the sixth conclusion of law is justified.  The contract of July 10, 1912, after providing for appraisers in case the parties fail to agree, and specifying when they shall be chosen, and that their report shall be filed within three months after they are chosen, continues: " *If in any case* the annual rate shall not be fixed prior to the termination of the original term of this contract, then the Company shall pay the annual rate theretofore prevailing until the new rate shall be determined, and shall then make up to the City the amount of any excess of the annual rate then determined over the previous annual rate."  Here we have an express provision in the contract as to the rate to be paid if for any reason the annual rate shall not be fixed within the time specified.

Failure on the part of the city to participate does not result in

the abrogation of the provision for arbitration, but by the terms of the agreement the company is required to continue at the old rate until a new and reasonable rate is fixed. If the city unduly delays action, it may be compelled by appropriate proceedings.

I, therefore, advise that the judgment be modified by reversing the conclusions of law as contained in the decision numbered 4, 5, 6 and 9, and finding defendant's request to find as conclusions of law numbered II and V, and making the following new finding as a conclusion of law: That the plaintiff, Manhattan Bridge Three-Cent Line, is obligated to pay to the defendant, the city of New York, during the term commencing July 10, 1922, and expiring July 10, 1937, an annual sum which shall be equal to five per cent of its gross annual receipts, but which sum shall not be less than $7,000, said payments to be made at the time, in the manner and subject to the conditions specified and named in said contract of July 10, 1912, until a new rate shall be determined in the manner provided in said contract.

As thus modified, the judgment should be affirmed, without costs.

Present — RICH, JAYCOX, MANNING, KELBY and YOUNG, JJ.

Judgment modified in accordance with opinion, and as modified unanimously affirmed, without costs.