J. W. EDGE and MOTOR CLUB OF IOWA, an Iowa corporation, appellants, v. ROBERT L. BRICE et al., members of State Highway Commission et al., appellees, BOARD OF WATERWORKS of City of Des Moines, NORTHERN NATURAL GAS COMPANY, and NORTHWESTERN BELL TELEPHONE COMPANY, intervenors.

No. 50524.

Маrch 6, 1962.

Lambach, Shorey & Plath, of Davenport, for appellants.

James E. Thomson, of Ames, for appellee Iowa State Highway Commission.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, by Robert B. Throckmorton and John R. Mackaman, of Des Moines, for intervenor Board of Waterworks Trustees of the City of Des Moines.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for intervenor Northern Natural Gas Company.

William F. McFarlin, of Des Moines, and Clark & Clark, of Ames, for intervenor Northwestern Bell Telephone Company.

Thornton, J.—Plaintiffs bring this action as taxpayers seeking a declaration chapter 205 of the Acts of the Fifty-eighth General Assembly is unconstitutional and to restrain defendant highway commission from making reimbursements under chapter 205. Three public utilities have intervened. The trial court held chapter 205 constitutional and dismissed plaintiffs' petition. They appeal.

This case finds its origin in the Federal interstate highway program. This program instituted by the Congress will, when completed, include 41,000 miles of superhighways connecting

all principal cities. This will not only be of benefit to the motoring public, but to the public generally by providing greater transportation facilities and aiding national defense.

The Federal statute pertinent here is 23 U. S. C. A., section 123, as follows:

"Relocation of utility facilities.

"(a) When a State shall pay for the cost of relocation of utility facilities necessitated by the construction of a project on the Federal-aid primary or secondary systems or on the Interstate System, including extensions thereof within urban areas, Federal funds may be used to reimburse the State for such cost in the same proportion as Federal funds are expended on the project. Federal funds shall not be used to reimburse the State under this section when the payment to the utility violates the law of the State or violates a legal contract between the utility and the State. Such reimbursement shall be made only after evidence satisfactory to the Secretary shall have been presented to him substantiating the fact that the State has paid such cost from its own funds with respect to Federal-aid highway projects for which Federal funds are obligated subsequent to April 16, 1958, for work, including relocation of utility facilities.

"(b) The term 'utility', for the purposes of this section, shall include publicly, privately, and cooperatively owned utilities.

"(c) The term 'cost of relocation', for the purposes of this section, shall include the entire amount paid by such utility properly attributable to such relocation after deducting therefrom any increase in the value of the new facility and any salvage value derived from the old facility. Added Pub. L. 85-767, Sec. 1, Aug. 27, 1958, 72 Stat. 900."

Chapter 205 of the Acts of the Fifty-eighth General Assembly, claimed to be unconstitutional, is as follows:

### "RELOCATION OF UTILITY FACILITIES

"AN ACT to provide for reimbursement to utilities for nonbetterment costs associated with relocation of facilities occasioned by the federal system of interstate highway and freeway projects.

"Be It Enacted by the General Assembly of the State of Iowa:

"SECTION 1. Whenever the Iowa state highway commission shall determine that relocation or removal of any utility facility now located in, over, along, or under any highway or street, is necessitated by the construction of a project on routes of the national system of interstate and defense highways including extensions within cities and towns, the utility owning or operating such facility shall relocate or remove the same in accordance with statutory notice. The costs of relocation or removal, including the costs of installation in a new location, shall be ascertained by the Iowa state highway commission or as determined in condemnation proceedings for such purposes and paid by the state out of the primary road fund as part of the cost of such federally-aided project.

"SEC. 2. Cost of relocation or removal shall include the entire amount paid by such utility properly attributable to such relocation or removal except the cost of land or any rights or interest in land, after deducting therefrom any increase in the value of the new facility and any salvage value derived from the old facility.

"SEC. 3. No reimbursement shall be made for any relocation or removal of facilities under this Act unless funds to be provided by federal aid amount to at least ninety (90) percent of each reimbursement payment.

"SEC. 4. The term 'utility' shall include all privately, publicly, municipally or cooperatively owned systems for supplying water, sewer, electric lights, street lights and traffic lights, gas, power, telegraph, telephone, transit, pipe line, heating plants, railroads and bridges, or the like service to the public or any part thereof if such system be authorized by law to use the streets or highways for the location of its facilities."

The sections of the Iowa Constitution claimed violated are:

"ARTICLE VII. SECTION 1. The credit of the State shall not, in any manner, be given or loaned to, or in aid of, any individual, association, or corporation; and the State shall never assume, or become responsible for, the debts or liabilities of any individual, association, or corporation, unless incurred in time of war for the benefit of the State."

"ARTICLE VIII. SEC. 3. The State shall not become a stockholder in any corporation, nor shall it assume or pay the debt or liability of any corporation, unless incurred in time of war for the benefit of the State."

"ARTICLE VII. SEC. 8. [1942 antidiversion amendment] All motor vehicle registration fees and all licenses and excise taxes on motor vehicle fuel, except cost of administration, shall be used exclusively for the construction, maintenance and supervision of the public highways exclusively within the state or for the payment of bonds issued or to be issued for the construction of such public highways and the payment of interest on such bonds."

The questions presented by this appeal are (1) Does the reimbursement of the cost of relocation of facilities to the utilities constitute a gratuity, is it the loaning of the credit of the state, or the assumption of a liability of another? and (2) Is the relocation of utility facilities a part of the construction of a public highway as the word "construction" is used in the antidiversion amendment?

These questions in relation to the Federal highway program have been passed on by a number of state supreme courts. The views expressed differ from court to court and among members of the same court. The following cases answer question (1) above in the negative, and hold the legislation constitutional: Opinion of the Justices (1957) 152 Maine 449, 132 A.2d 440; Opinion of the Justices (1957) 101 N. H. 527, 132 A.2d 613; Minneapolis Gas Co. v. Zimmerman (1958) 253 Minn. 164, 91 N.W.2d 642; Northwestern Bell Telephone Co. v. Wentz (1960), N. D., 103 N.W.2d 245; State v. City of Austin (State v. City of Dallas), (1960) 160 Tex. 348, 331 S.W.2d 737; State Road Commission of Utah v. Utah Power & Light Co. (1960) 10 Utah 2d 333, 353 P.2d 171; Jones v. Burns (1960), Mont., 357 P.2d 22; State Highway Department v. Delaware Power & Light Co. (1961), Del., 167 A.2d 27; and State ex rel. City of Albuquerque v. Lavender (1961) 69 N. M. 220, 365 P.2d 652. The following are contra: State v. Southern Bell Telephone & Telegraph Co. (1958) 204 Tenn. 207, 319 S.W.2d 90; State ex rel. Rich v. Idaho Power Co. (1959) 81 Idaho 487, 346 P.2d 596; and

Washington State Highway Comm. v. Pacific Northwest Bell Telephone Co. (December 1961), Wash., 367 P.2d 605.

The following cases answer question (2) in the affirmative holding the legislation constitutional: Opinion of the Justices, 101 N. H. 527, 132 A.2d 613; Minneapolis Gas Co. v. Zimmerman, Northwestern Bell Telephone Co. v. Wentz, State v. City of Austin, and Jones v. Burns, all supra. The following are contra: Opinion of the Justices, 152 Maine 449, 132 A.2d 440, State ex rel. Rich v. Idaho Power Co. and Washington State Highway Commission v. Pacific Northwest Bell Telephone Co., all supra; Mulkey v. Quillian, 213 Ga. 507, 100 S.E.2d 268; and see annotation, 75 A. L. R.2d 419.

██ ██ I. Plaintiffs recognize there is no presumption of invalidity of a statute and the burden is upon them to establish there is no reasonable state of facts which will support the statute. Diamond Auto Sales, Inc., v. Erbe, 251 Iowa 1330, 1335, 105 N.W.2d 650, 652, and citations. All parties concede public utilities have the right to use highway rights of way and the General Assembly can regulate such use and require relocation of facilities at the cost of the utilities. Chapters 320, 488 and 489, Code of Iowa, 1958.

██ II. That section 1 of Article VII and section 3 of Article VIII of the Iowa Constitution refer to secondary indebtedness, i.e., becoming surety for the debt of another, has been determined in Merchants' Union Barb Wire Co. v. Brown, 64 Iowa 275, 20 N.W. 434, and Grout v. Kendall, 195 Iowa 467, 192 N.W. 529. The holding in these cases is in accord with the plain language of the Constitution.

██ There is no prior indebtedness proposed to be paid or guaranteed by chapter 205. The statute requires the reimbursement or payment of costs determined to be necessary and occasioned by construction of the national defense system of interstate and defense highways. Until the determination of the necessity for and the actual relocation there is no indebtedness. It is a primary obligation placed on the state by the statute.

██ The reimbursement is not a gratuity, but an appropriation of state funds for a public purpose. The public purpose to be served is the construction of a highway. The reason for the reimbursement is not so the utilities can better perform their

services. The utilities are no better off after the relocation and reimbursement than they were before. The reimbursement is strictly for nonbetterment costs for which the state will be reimbursed to the extent of 90% by the Federal Government. In Merchants' Union Barb Wire Co. v. Brown, supra, the appropriation was of $5000 to assist The Farmers' Protective Association in defending patent infringement suits pending against it. The association was a nonprofit corporation and its purpose was to procure for farmers of this state barbed wire with which to enclose their lands at the actual cost of manufacturing the same. This court said at page 280 of 64 Iowa, "We cannot discover that any provision of the constitution is violated by the act." Implicit in this holding is the appropriation was for a public purpose and not a gratuity. The Merchants' Union case goes further than we are asked to go here.

The General Assembly had the power to require relocation at the cost of the utilities and thus cast the burden of relocation upon the customers of the utilities. These customers, as such, would receive no benefit from the relocation, only the burden. The public generally of the United States, not merely Iowa, would receive the benefit. The Congress recognized this and passed section 123 above set out to reimburse except where prohibited by state law or contract. It was proper for the General Assembly, in the exercise of the police power of the state, to recognize the economic and equality factors involved. In addition to the authorities first above cited as supporting this holding, see also the opinion of Justice, then Judge, Cardozo in Oswego & S. R. Co. v. State (1919) 226 N. Y. 351, 124 N.E. 8, 10.

III. To answer the second question presented it is necessary to determine the scope of "construction * * * of the public highways." Costs of administration, maintenance and supervision are not involved. The Congress and the legislatures of many states by legislation have determined the cost of relocating public utility facilities is a proper part of the cost of construction of a highway. Our General Assembly made the same determination in the enactment of chapter 205. The General Assembly of course cannot by subsequent legislation define the scope of constitutional provisions. That is a judicial function. But the determination of the Congress and the various leg-

islatures is entitled to weight in our consideration of the scope of the constitutional provision.

As above pointed out the courts of five states, New Hampshire, Minnesota, Texas, North Dakota, and Montana have construed similar constitutional provisions to include the cost of relocating the facilities. Four, Maine, Georgia, Idaho and Washington, have held to the contrary. Two views are thus presented, a liberal, living and practical view, and a narrow, strict one. In Plank v. Grimes, 238 Iowa 594, 599, 28 N.W.2d 34, 36, we held section 324.49, Code of Iowa, 1946 (repealed by the Fifty-seventh General Assembly), authorizing the treasurer to pay rewards to persons who bring to his attention any evasion of the tax, was well within the exception for costs of administration as used in the antidiversion amendment. There is nothing therein to indicate a strict, narrow construction.

 It is proper in our determination to consider the intention of the framers of the provision as the language used, the object to be attained, or evil to be remedied, and the circumstances at the time of adoption indicate, Halsey & Co. v. City of Belle Plaine, 128 Iowa 467, 104 N.W. 494; Allen v. Clayton, 63 Iowa 11, 18 N.W. 663, 50 Am. Rep. 716; and Town of McGregor v. Baylies, 19 Iowa 43; and that they intended the provision to endure for an extended future period. The antidiversion amendment was adopted by the Forty-eighth General Assembly in 1939, the Forty-ninth General Assembly in 1941, and by the voters at the general election in 1942. Then, as now, motor-vehicle traffic was heavy on existing highways; there was a need to supply adequate highways for future use; motor-vehicle-fuel taxes and license fees were considered high. Utility facilities were occupying rights of way without cost to them though they were required to pay relocation costs. From the language used, needs and circumstances, we think it is fair to say the intent and purpose was to assure adequate highways and that a source of funds be available for that purpose; and at the same time limit the use of the funds, not to maintain the status quo of highway construction but to keep such fees and taxes at a reasonable rate and not allow the same to become a general revenue measure to be used for governmental purposes totally foreign to highways. The necessity for the removal of

utility facilities was not then totally foreign to highway construction, though the state had not yet assumed the cost of relocation. It is fair to say the intent of the term "construction" as used in the amendment includes all things necessary to the completed accomplishment of a highway for all uses properly a part thereof. The use by utilities is such a use and payment of the relocation costs as contemplated in chapter 205 does not violate the antidiversion amendment.

It is not necessary for us to consider the various sources of funds in the primary road fund. Our holding makes the entire fund available for the purposes of chapter 205.—Affirmed.

All JUSTICES concur except BLISS, J., not sitting.