Reuben C. BECHTEL et al., Appellees,

v.

CITY OF DES MOINES, Iowa, its City Councilmen Richard Olson et al., Appellants.

No. 2–57096.

Supreme Court of Iowa.

Jan. 22, 1975.

Philip T. Riley and M. A. Iverson, Des Moines, for appellants City of Des Moines and its councilmen.

Meardon, Sueppel, Downer & Hayes, Iowa City, for appellant League of Iowa Municipalities.

Richard C. Turner, Atty. Gen., Asher E. Schroeder, Special Asst. Atty. Gen., and Robert W. Goodwin, Asst. Atty. Gen., for appellant Iowa State Highway Commission.

Max Putnam, Des Moines, for appellees.

UHLENHOPP, Justice.

In this appeal we construe the Twenty-fifth Amendment to the Iowa Constitution, which grants home rule to cities. We use the term "cities" to include towns. See 64 G.A. ch. 1088, § 2(1).

The Tenth Amendment to the United States Constitution states, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

Section 1 of article III of the Iowa Constitution, relating to the Legislative Department, states, "The Legislative authority of this State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives; and the style of every law shall be, 'Be it enacted by the General Assembly of the State of Iowa.'"

Under this constitutional framework, Chief Justice Dillon stated in 1868 regarding the relative positions of the Iowa General Assembly and cities:

The true view is this: Municipal corporations owe their origin to, and derive their powers and rights wholly from, the legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so it may destroy. If it may destroy, it may abridge and control. City of Clinton v. Cedar Rapids & M.R.R., 24 Iowa 455, 475.

The same year he further stated:

[A] municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily implied or necessarily incident to the powers expressly granted; third, those absolutely essential to the declared objects and purposes of the corporation—not simply convenient, but indispensible; fourth, any fair doubt as to the existence of a power is resolved by the courts against the corporation—against the existence of the power. Merriam v. Moody's Executors, 25 Iowa 163, 170.

The Dillon rule became embedded in Iowa law. E. g., McSurely v. McGrew, 140 Iowa 163, 118 N.W. 415; Pape v. Westerdale, 254 Iowa 1356, 121 N.W.2d 159.

In Iowa as elsewhere, dissatisfaction arose with the full sweep of the Dillon principle, especially as cities became larger and took on more functions. On the one extreme were those who opposed city autonomy almost altogether; on the other were those who favored complete power by cities—unlimited home rule. Scheidler, Implementation of Constitutional Home Rule in Iowa, 22 Drake L.Rev. 294, 296–297. Over a period of years, Iowa legislators who favored home rule attempted to obtain repeal or modification of the Dillon rule, and in 1963 they secured an enactment by the Sixtieth General Assembly. See § 368.2, Code 1973. This act appeared to grant home rule in broad terms but actually was "a statute calling for a more liberal construction of other statutes granting power pertaining to local and internal affairs."

Richardson v. City of Jefferson, 257 Iowa 709, 716, 134 N.W.2d 528, 533.

Home-rule proponents continued their efforts in the General Assembly. Eventually they mustered sufficient strength to obtain legislative approval of a proposed constitutional amendment containing an accommodation between the powers of the General Assembly and cities. Both houses passed such a joint resolution at two separate sessions. 61 G.A. ch. 477, § 1; 62 G.A. ch. 462, § 1. On November 7, 1968, the voters approved the proposal as the Twenty-fifth Amendment to the Iowa Constitution, commonly called the home-rule amendment. The amendment states:

Municipal corporations are granted home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs and government, except that they shall not have power to levy any tax unless expressly authorized by the general assembly.

The rule or proposition of law that a municipal corporation possesses and can exercise only those powers granted in express words is not a part of the law of this state.

In 1969, the next General Assembly established an interim committee, composed of legislators and others, to "review state statutes as they apply to city and town government" and to "recommend appropriate revisions which will implement home rule and facilitate the solution of local problems by local initiative." 63 G.A. ch. 333, § 3. During the following biennium, the committee laboriously studied the Iowa statutes on cities and in 1971 presented a report containing proposed legislation to the first session of the Sixty-fourth General Assembly.

The General Assembly enacted the proposed legislation with amendments, and the governor approved it. This was the home-rule act. 64 G.A. ch. 1088.

The home-rule act is a comprehensive statute consisting of 352 sections. Sections 1 through 198 (except § 9) constitute a new City Code of Iowa comprised of definitions, rules of construction, substantive provisions, and certain limitations on home rule desired by the General Assembly. Section 9 pertains to the effective dates of sections. Section 199 abolishes a number of then-existing chapters of the title of the Iowa Code on cities. Sections 200 through 352 amend a number of sections of the Iowa Code outside the title on cities.

Section 9, recently amended, contains rather complicated provisions. See 65 G.A. ch. 1212. Under that section as amended, §§ 199 through 352 take effect on July 1, 1975. Sections 1 through 198 take effect on July 1, 1972, with the qualification that until July 1, 1975, a city is subject only to such parts of §§ 1 through 198 as it elects to come under by resolution of its council. Upon such an election, conflicting laws on the particular topic do not apply to the city. (Presumably this qualification in § 9 does not apply to § 9 itself.)

Under the qualification in § 9, the Des Moines city council elected to come under § 83 of the home-rule act, which extends the time for certifying property taxes. After Des Moines thus came under § 83, plaintiffs, who are all voters, property owners, and taxpayers in that City, commenced the instant declaratory judgment action. For this appeal, we separate the defendants in the action in the following way. We place together the City of Des Moines, its councilmen, and the League of Iowa Municipalities. These defendants have made common cause here and have joined in a single brief. We will speak of them collectively as the City. The other defendant is the Iowa State Highway Commission. We will call this defendant the Commission.

Regarding the place of the Commission in this action, an employee of the Commission serves on the technical staff of the Central Iowa Regional Planning Commission, which is an independent body. See Code 1973, chs. 307, 473A. The Planning Commission desired to propose a transportation plan for

the Des Moines urban area, and in that connection had its technical staff study the feasibility of a north-south freeway in the area. The Highway Planning Surveys Department of the Iowa State Highway Commission made a traffic study for use by the Highway Commission in considering proposals by the Planning Commission in the event the Planning Commission recommended a north-south freeway to the Highway Commission.

The Planning Commission developed a proposed transportation plan to handle projected 1990 travel demands, including a recommendation for a north-south freeway in the Des Moines urban area. The Des Moines city council approved the plan but deleted the freeway proposal. Neither the Planning Commission nor the City of Des Moines has proposed a north-south freeway to the Highway Commission. The Highway Commission has not taken a position on that subject and does not have such a freeway in its five-year plan or other plans. In any event, such a project would necessitate extensive federal assistance, and the City of Des Moines does not qualify for such help, not having a continuing comprehensive transportation plan. See 23 U.S.C. § 134.

The trial court tried the action on the merits and held for plaintiffs by declaratory judgment and nunc pro tunc order. Defendants appealed.

As we view the appeal, three issues control the decision. First, does a justiciable controversy exist between plaintiffs and the City and between plaintiffs and the Commission? Second, does the home-rule amendment prohibit the General Assembly from repealing and amending statutes on cities which were in effect when the amendment was adopted and from thereafter enacting new statutes pertaining to or limiting the powers of cities? Third, are certain sections of the home-rule act invalid under specified sections of the Iowa Constitution other than the home-rule amendment?

I. *A Justiciable Controversy?* Our rules authorizing declaratory judgments are broad and we apply them liberally. Division XI, Rules of Civil Procedure; Gradischnig v. Polk County, Iowa, 164 N.W.2d 104 (Iowa). Nevertheless, a justiciable controversy must exist; we will not decide an abstract question simply because litigants desire a decision on a point of law or fact. McCarl v. Fernberg, 256 Iowa 93, 126 N.W.2d 427.

But the question may be close on whether a justiciable controversy exists. The difference between abstract questions and justiciable controversies is one of degree. We recently restated the governing principles in Green v. Shama, 217 N.W.2d 547 (Iowa). We quoted the following from Katz Investment Co. v. Lynch, 242 Iowa 640, 648, 47 N.W.2d 800, 805:

> The difference between a mere abstract question and a controversy has been called one of degree which is difficult to define precisely. The basic question is said to be whether the facts alleged show there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 829.

We also quoted from Wesselink v. State Department of Health, 248 Iowa 639, 643–644, 80 N.W.2d 484, 486–487. In Wesselink this court stated:

> Our declaratory judgment rules necessarily deal with present rights, and we must examine carefully each petition to determine whether such legal right is in issue between the parties litigant. . .

> We search, then, for an "antagonistic assertion and denial of right" and if found and other proper allegations appear, the court may then entertain the question of whether the plaintiffs' claim is proper and justified. Manhattan Bridge Three-Cent Line v. City of New

York, 204 App.Div. 89, 198 N.Y.S. 49.
. . .

Defendants correctly contend there must be sufficient facts pleaded to show that the issue is concrete and that particular legal rights and powers will be or are affected. Otherwise the court would be justified in dismissing the petition as merely advisory in character.

In the case at hand, the justiciable-controversy question presents different considerations as to the City and as to the Commission.

■ (a) The City does not dispute the justiciability of the dispute which we have listed as the second issue in the appeal: whether the General Assembly may repeal or amend statutes on cities in effect on November 7, 1968, and may, after that date, enact new statutes affecting cities. Our examination of the action leads us to conclude that the second issue presents a dispute of sufficient immediacy and reality to warrant a declaratory judgment vis-a-vis plaintiffs and the City. Section 83 of the home-rule act, relating to the date for certifying property taxes, has already been placed in effect by the Des Moines city council. Plaintiffs are property owners and taxpayers affected by certification of such taxes. They dispute the validity of § 83, and do so on the basis of the second issue in the appeal.

The answer is less clear as to various other sections of the home-rule act that plaintiffs challenge under specified sections of the Iowa Constitution—the third issue in the appeal. After deliberation, however, we conclude that a justiciable controversy exists between plaintiffs and the City as to this issue also, for two reasons. First, the sections of the home-rule act which are challenged are interrelated with § 83. Second, while those sections have not yet gone into effect by election by the council, they will go into operation on July 1, 1975. When in operation, those sections will affect plaintiffs as property owners and taxpayers. We hold, therefore, that a justicia-

ble controversy also exists between plaintiffs and the City as to the third issue in the appeal. See Lewis Consolidated School Dist. v. Johnston, 256 Iowa 236, 127 N.W.2d 118; McCarl v. Fernberg, 256 Iowa 93, 126 N.W.2d 427; Wesselink v. State Department of Health, 248 Iowa 639, 80 N.W.2d 484; Melsha v. Tribune Publishing Co., 243 Iowa 350, 51 N.W.2d 425. See also Farmers Butter & Dairy Co-op. v. Farm Bureau Mut. Ins. Co., 196 N.W.2d 533 (Iowa); Redfield v. Iowa State Highway Comm'n, 252 Iowa 1256, 110 N.W.2d 397; Nitta v. Kuda, 249 Iowa 853, 89 N.W.2d 149; Department of Financial Institutions v. General Finance Corp., 227 Ind. 373, 86 N.E.2d 444.

■ (b) The situation is quite different, however, as to the Commission. Plaintiffs' declaratory judgment action against that defendant is founded on the premise that the Commission plans to construct a north-south freeway in Des Moines over the protest of the Des Moines city council and the inhabitants.

The difficulty is with plaintiffs' premise. The Commission has no plan to construct such a freeway and no such proposal in its five-year or other plan. Whether the Commission will ever propose a freeway is conjectural. Also conjectural are the questions of whether the Commission will propose a freeway over objection by the City of Des Moines and whether Des Moines will make itself eligible for necessary federal assistance. In addition, we have no way of knowing what the statutes at some future day may be regarding the Commission's authority at that time—if the Commission does someday decide to build a freeway.

The question, then, is whether plaintiffs may presently obtain a declaratory judgment on the *possibility* that the Commission may someday decide to build a freeway. Plaintiffs are correct that our decisions are liberal on the right of a person to obtain a declaration against a state agency as to action or impending action by the agency. Lewis Consolidated School Dist. v. Johnston, 256 Iowa 236, 127 N.W.2d 118; Wes-

selink v. Department of Health, 248 Iowa 639, 80 N.W.2d 484. But the decisions do not go as far as plaintiffs urge us to go. This case is over the line, as to the Commission. 22 Am.Jur.2d Declaratory Judgments § 18 at 861 ("Since the courts have no jurisdiction to deal with hypothetical and speculative questions, and since they may not render declaratory judgments where the parties merely fear or apprehend that a controversy may arise in the future, the courts generally will not declare the rights of parties upon a state of facts which has not arisen and may never arise."); 26 C.J.S. Declaratory Judgments § 28 at 102–103 ("the danger or dilemma of which the plaintiff complains must be present and not speculative or contingent on the happening of hypothetical future events. The controversy must have proceeded beyond the stage of mere apprehension or fear that defendant will claim adversely to plaintiff's rights"). We hold that a justiciable controversy does not exist between plaintiffs and the Commission. We thus proceed no farther as to that defendant and restrict our further consideration of the appeal to plaintiffs and the City.

II. *Construction of Home-Rule Amendment.* The second issue has two aspects but they are really two sides of the same coin: whether after November 7, 1968, the General Assembly could validly (a) repeal or amend statutes on cities in effect on that date and (b) enact new statutes affecting or limiting cities' powers. This issue turns on the meaning of the words in the home-rule amendment, "not inconsistent with the laws of the General Assembly." Plaintiffs contend those words mean laws of the General Assembly in existence on November 7, 1968. The City contends the words mean laws of the General Assembly in existence from time to time when the powers of a city with respect to a subject are called into question.

■ We believe the City has the better of this argument. The history of the Iowa home-rule movement demonstrates that the intention of the framers of the amendment was to grant cities power to rule their local affairs and government (other than to levy taxes), subject to the superior authority of the General Assembly. Scheidler, Implementation of Constitutional Home Rule in Iowa, 22 Drake L.Rev. 294, 297, 302, 304. This means that the General Assembly, in the exercise of its authority, may from time to time retain, repeal, or amend statutes on cities in effect on November 7, 1968, or enact new ones, and that subject to such authority, cities have power to deal with local affairs and government, except to levy taxes—unless the General Assembly gives them that power too. Thus the provisions of the home-rule act repealing and amending existing statutes and enacting new ones affecting cities do not contravene the home-rule amendment, but implement it.

■ Plaintiffs' restricted view of "the laws of the General Assembly" would freeze into continued existence the statutes on cities which were in the Code on the effective date of the home-rule amendment and would actually elevate those statutes to constitutional status. Thus numerous sections governing many details would be locked in, beyond the authority of the legislature to alter with changing times. This appears contrary to the principle that a constitution should be a vital, living instrument, designed for an extended period. Edge v. Brice, 253 Iowa 710, 113 N.W.2d 755; 16 Am.Jur.2d Constitutional Law § 61 at 234; 16 C.J.S. Constitutional Law § 14 at 67–68. Plaintiffs' view would also frustrate the very purpose of home rule—to grant cities more flexibility to cope with their problems. Cities would have to function within the straight-jacket of the detailed existing statutes governing their affairs; they could not even obtain relief against those statutes from the General Assembly.

■ Moreover, the seat of legislative authority is the General Assembly, and that body may exercise all rightful legislative powers not expressly prohibited. Purczell v. Smidt, 21 Iowa 540. In connection with

the exercise of such powers by the General Assembly, we do not look to what the constitution authorizes but to what it prohibits. Knorr v. Beardsley, 240 Iowa 828, 38 N.W.2d 236. We are loath to hold that the words, "the laws of the General Assembly," expressly prohibit the General Assembly from legislating on matters relating to cities.

Finally, the conduct of the individuals in the best position to know the intent of the framers of the amendment belies plaintiffs' view. The individuals who were in the forefront of the struggle to obtain the home-rule amendment went forward with the development and passage of the home-rule act. On contemporaneous construction, see Edge v. Brice, 253 Iowa 710, 113 N.W.2d 755; Carlton v. Grimes, 237 Iowa 912, 23 N.W.2d 883; 16 Am.Jur.2d Constitutional Law § 85 at 269; 16 C.J.S. Constitutional Law § 32 at 105.

We hold, therefore, that under the home-rule amendment and general legislative authority, the General Assembly may repeal, amend, and enact statutes regarding cities, that the authority of the General Assembly is superior to cities' powers, and that the home-rule act is not invalid on the bases urged by plaintiffs.

■ The parties argue specifically the question of cities' power of eminent domain. The home-rule act makes plain that cities have such power. While the act repeals various existing statutes on eminent domain, it expressly provides in § 328 that cities have the eminent domain power "for public purposes which are reasonable and necessary as an incident to the powers and duties conferred upon cities." Such "powers and duties" would be those granted by statutes or by the home-rule amendment itself.

III. *Specific Constitutional Challenges.* Plaintiffs challenge the constitutionality of various sections of the home-rule act under cited sections of the Iowa Constitution.

■ (a) They assert that §§ 10 and 11(1), (2), and (3) of the act contravene article I, §§ 1 and 2, and article XII, § 1, of the Iowa Constitution. Sections 10 and 11(1), (2), and (3) of the act provide:

§ 10. A city may, except as expressly limited by the Constitution, and if not inconsistent with the laws of the general assembly, exercise any power and perform any function it deems appropriate to protect and preserve the rights, privileges, and property of the city or of its residents, and to preserve and improve the peace, safety, health, welfare, comfort, and convenience of its residents. This grant of home rule powers does not include the power to enact private or civil law governing civil relationships, except as incident to an exercise of an independent city power.

§ 11.

1. A power of a city is vested in the city council except as otherwise provided by a state law.

2. The enumeration of a specific power of a city does not limit or restrict the general grant of home rule power conferred by the Constitution. A city may exercise its general powers subject only to limitations expressly imposed by a state or city law.

3. An exercise of a city power is not inconsistent with a state law unless it is irreconcilable with the state law.

Sections 1 and 2 of article I of the constitution state:

§ 1. All men are, by nature, free and equal, and have certain inalienable rights—among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness.

§ 2. All political power is inherent in the people. Government is instituted for the protection, security, and benefit of the people, and they have the right, at all times, to alter or reform the same, whenever the public good may require it.

Section 1 of article XII states:

§ 1. This Constitution shall be the supreme law of the State, and any law inconsistent therewith shall be void. The General Assembly shall pass all laws necessary to carry this Constitution into effect.

The quoted portions of §§ 10 and 11 of the act delineate powers of cities. We are at a loss to detect wherein the quoted provisions violate the quoted portions of the constitution, and plaintiffs do not make clear what the violations are. Plaintiffs' contention may be founded on their view that the home-rule amendment prohibits the General Assembly from repealing or amending existing statutes affecting cities and from enacting new statutes. We rejected that contention, however, in division II of this opinion.

■ Perhaps plaintiffs hold the view that they, or the cities, have vested rights in existing statutes pertaining to cities, rendering repeal or change of those statutes beyond the authority of the General Assembly. Such is not the law. Leach v. Commercial Savings Bank, 205 Iowa 1154, 213 N.W. 517; City of Dubuque v. Illinois C.R.R., 39 Iowa 56; Truax v. Corrigan, 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254; Middleton v. Texas Power & Light Co., 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527.

■ As to the quoted provisions of the home-rule act, therefore, we hold that plaintiffs have not overcome the presumption of constitutionality which attends enactments of the General Assembly. Hearth Corp. v. C–B–R Development Co., Inc., 210 N.W.2d 632 (Iowa); Iron Workers Local No. 67 v. Hart, 191 N.W.2d 758 (Iowa); Lee Enterprises, Inc. v. Iowa State Tax Comm'n, 162 N.W.2d 730 (Iowa).

■ (b) Next, plaintiffs assert that § 43 of the home-rule act violates article III, § 30, of the Iowa Constitution. The General Assembly amended § 43. 65 G.A. ch. 136, § 325. Sections 25 through 46 of the act make clear that § 43 deals with proposed incorporations, discontinuances, and boundary adjustments of cities. Section 43 as amended provides:

§ 43. The committee [city development board-members and local representatives] shall approve or disapprove the petition or plan as amended, within ninety days of the final hearing, and shall file its decision for record and promptly notify the parties to the proceeding of its decision. If a petition or plan is approved, the board shall set a date within ninety days for a special election on the proposal and the county commissioner of elections shall conduct the election. In a case of incorporation or discontinuance, qualified voters of the territory or city may vote, and the proposal is authorized if a majority of those voting approves it. In a case of annexation or severance, qualified voters of the territory and of the city may vote, and the proposal is authorized if a majority of the total number of persons voting approves it. In a case of consolidation, qualified voters of each city to be consolidated may vote, and the proposal is authorized only if it receives a favorable majority vote in each city. The county commissioner of elections shall publish notice of the election as provided in section thirty-nine (39) of this Act, and shall conduct the election in the same manner. as other special city elections. The costs of an incorporation election shall be borne by the initiating petitioners if the election fails, but if the proposition is approved the cost shall become a charge of the new city.

Section 30 of article III of the constitution states in pertinent part:

§ 30. . . . [N]o law changing the boundary lines of any county shall have effect until upon being submitted to the people of the counties affected by the change, at a general election, it shall be approved by a majority of the votes in each county, cast for and against it.

The constitutional requirement relates to counties; § 43 deals with cities. This challenge to the validity of § 43 must fail.

(c) Finally, plaintiffs assert that §§ 25, 35, 39, and 40(2) of the home-rule act, which are too long to set forth verbatim, contravene article I, § 2, of the Iowa Constitution. These sections of the act also are in the division dealing with city incorporation, discontinuance, and boundary adjustment, among other things.

This division of the act creates a new state agency called a City Development Board. Section 25 contains definitions of terms used in the division. Section 35 provides that petitions for incorporation, discontinuance, or boundary adjustment may be filed with the City Development Board. Section 39 provides that the committee named in § 43, supra, shall after notice hold public hearings on petitions. Section 40 provides that the committee shall base its findings on all relevant information before it including a number of specified items, one of which is "[r]ecommendations of the regional planning authority for the area." Plaintiffs challenge the language just quoted from § 40—in addition to the other sections we have summarized.

Here again we are at a loss to understand how the challenged provisions of the act contravene § 2 of article I of the constitution, previously quoted. Apparently plaintiffs' thought is that the committee in question is to consider recommendations of the regional planning authority, that this enlarges the function of regional planning authorities, and that the General Assembly could not enlarge those functions because they must remain as they were on November 7, 1968. This takes us back to the argument involved in division II of our opinion. Since we held there that existing statutes are not frozen by the home-rule amendment, plaintiffs' argument here must fail. We conclude that §§ 25, 35, 39, and 40(2) do not contravene § 2 of article I of the constitution.

We thus hold that a justiciable controversy exists except as to the Highway Commission, and we reject plaintiffs' attack on the home-rule act. Since the trial court held otherwise, its judgment and nunc pro tunc order cannot stand.

We have carefully considered plaintiffs' motion to dismiss the Highway Commission's appeal. The motion is overruled.

Reversed.