**IOWA ELECTRIC LIGHT AND POWER COMPANY, Appellant,**

v.

**The IOWA STATE HIGHWAY COMMISSION, Appellee.**

No. 2–56838.

Supreme Court of Iowa.

July 31, 1975.

John F. Gaston, Joe A. Greenlief and William M. Dallas of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellant.

Minor Barnes and Terry J. Abernathy of Pickens & Barnes, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and REES, UHLENHOPP, REYNOLDSON, and HARRIS, JJ.

HARRIS, Justice.

This appeal turns on the meaning of a phrase in § 306A.11, The Code. The question is whether there was any "increase in value of the new facility" upon relocation of electric transmission lines required by construction of an interstate highway. The trial court determined there was an increase in value. We disagree.

I. As a general rule utility poles and lines must be relocated at the owner's cost whenever, by reason of enlargement or repair of a highway, such poles or lines become an obstacle. § 319.6, The Code.

Sections 306A.10 through 306A.13 provide an exception to the general rule. Chapter 306A deals with controlled access highways. Section 306A.10 specifies reimbursement to the owner of utility facilities when their relocation is required by construction of an interstate highway. We explained the rationale and purpose of § 306A.10 in *Edge v. Brice*, 253 Iowa 710, 716–719, 113 N.W.2d 755, 758 (1962). The federal government provides 90 percent of the cost of construction of interstate highways. In connection with that provision a federal statute (23 U.S.C.A., § 123) provides for reimbursement to a state which pays costs of relocation of the utility facilities.

Section 306A.10, The Code, was enacted by the General Assembly in acceptance of the invitation extended in the federal statute. The theory underlining both the federal and state statutes is that costs of relocating utility facilities made necessary by construction of an interstate highway should be considered a part of the cost of constructing the highway rather than an expense to the utility users. *Edge v. Brice, supra.*

II. Section 306A.11 defines the costs eligible for such reimbursement:

"Cost of relocation or removal shall include the entire amount paid by such utility properly attributable to such relocation or removal except the cost of land or any rights or interest in land, *after deducting therefrom any increase in the value of the new facility* and any salvage value derived from the old facility." (Emphasis added.)

The narrow question posed in this suit is whether there was any increase in the value of the new facility upon relocation. The facts are not seriously disputed.

Plaintiff generates and supplies electrical power in an area which includes the City of Cedar Rapids. The Iowa Highway Commission (the commission) is constructing Interstate Highway 380 northward into Cedar Rapids and, as construction progresses, an increasing number of plaintiff's power lines must be relocated.

The record is clear relocation of a portion of a power line does not improve the whole of it. None of the replaced segments involved in this litigation is of greater capacity than the one it replaced. All plaintiff's facilities replaced by reason of the highway construction are no more than functionally equal to the facility before replacement. (There is one exception, upon which the parties are agreed, involving new underground crossings.)

New poles are used in the relocations but this does not increase the value of the lines. The result is the same as when insulators, cross-arms, and other parts of lines are damaged and must be replaced with new materials and parts.

The life of a pole is variable depending on the soil in which it is placed and the hazards to which it will be exposed. All plaintiff's poles are treated to lengthen their useful life. Except for hazards such as storms or accidents the life is very long. Similarly the life of a cross-arm is variable and is apt to be affected by hazards such as ice storms. Insulators have an almost perpetual life unless damaged or destroyed by outside force. The wires are usually copper or aluminum which deteriorate little with age. The cutting and splicing of wires in repair or replacement of small line segments is very frequently more expensive than the cost of the wire used in such a segment.

Lines are sometimes replaced because damaged or destroyed. Sometimes (though not in this case) greater electrical capacity is needed to serve the public and whole lines must be replaced. If there are segments in such a line which have been recently reconstructed such segments are commonly removed with the old. It appears to be more economically feasible for the company to build all new lines than to utilize the recently reinstalled newer segments.

Plaintiff is required to maintain its books in accordance with the requirements of the Iowa commerce commission and the federal power commission under the uniform system of accounts. Under that system the original cost of the utility is depreciated at a composite rate of about 3.25 percent. When a portion of a facility is relocated the original cost of the portion removed is deducted from the "plant in service" capital account. The reserve for depreciation is also reduced by the original cost of the facility removed less scrap or salvage value.

Plaintiff's records are maintained on a yearly installation basis without itemization of specific costs on each pole, each cross-arm, or each segment of wire. Original cost therefore is reflected as an average cost for the year of installation. Upon relocation the oldest facilities are removed from the record based on the average cost for the year the facility was installed. Any materials removed by reason of highway construction and retained for re-use are re-entered by plaintiff on its books and reflected in its inventory account at current new costs.

Accordingly the trial court found:

" * * * [T]he plaintiff would be in a better position after relocation if it were not required to grant credit for expired service life. Deletion of expired service life credit is inevitably reflected in the total utility plant investment. The reimbursement represents additional working capital, annual depreciation would be increased. The utility is not required to recognize conversion gain for income tax purposes and the relocation cost qualifies or an investment credit. If there is no credit for expired service life, the utility would be in a better position contrary to the express requirement of Chapter 306A as interpreted by the Iowa Court in *Edge v. Brice, supra*."

Plaintiff insists under the circumstances the relocation of the short segment did not result in any "increase in the value of the

new facility" under § 306A.11, The Code. The trial court however agreed with the commission in the view there was an increase in value.

■ We believe plaintiff's interpretation is right. The commission's argument stands or falls on the manner in which plaintiff's books are maintained. And, by the commission's own admission, plaintiff is helpless to maintain them in any manner other than that strictly prescribed by state and federal regulatory agencies.

The system of bookkeeping is no advantage to plaintiff in terms of its use of the facility, the facility's length of life, or the facility's electrical transmission capacity. The facility itself is the same to plaintiff as it was before relocation, and has not increased in value.

The system of bookkeeping is not actually plaintiff's doing. Any advantage, real or imagined, which flows from the system of bookkeeping does not flow from the relocation.

III. The commission relies heavily on language from our opinion in *Edge v. Brice, supra*:

"The reimbursement is not a gratuity, but an appropriation of state funds for a public purpose. The public purpose to be served is the construction of a highway. The reason for the reimbursement is not so the utilities can better perform their services. The utilities are no better off after the relocation and reimbursement than they were before. *The reimbursement is strictly for nonbetterment costs* for which the state will be reimbursed to the extent of 90% by the federal government. * * *." 253 Iowa at 716–717, 113 N.W.2d at 758. (Emphasis added.)

The commission believes the emphasized language announces a rule of construction for the statute. Such a suggestion misconstrues the language quoted. The word "strictly" as employed in *Edge* only describes the position of the utility before and after the relocation.

"It is ancient wisdom that statutes should be interpreted so as to effectuate their manifested purpose or object. * * *.

"In modern times the amount of legislation and the extent of its scope has increased so much that the body of statutory law is a dominant source from which to determine prevailing social and economic policies. * * *." 2a Sands, Sutherland Statutory Construction, Fourth Ed., § 58.06, page 474.

The interpretation of the section urged by the commission would, to the extent of its acceptance, frustrate the expressed and manifest intent of the legislature which we described in *Edge*. Plaintiff has made a satisfactory, indeed a nearly conclusive, showing the facility in question is at least no better than before relocation. Relocation was made necessary by construction of the interstate highway. Reimbursement therefore should come from highway funds. Such reimbursement should not be reduced by a strained construction of the phrase in question which stands on the narrow ground of a bookkeeping system imposed upon the utility. Any tax consequences, real or imagined, which may thereby flow to the utility are so inconsequential as to be unworthy of consideration when weighed against the purpose of the statute.

IV. The parties dispute whether 23 U.S.C.A., § 123, is applicable. That federal statute was discussed by us in *Edge* and, if controlling, would expressly support the view of plaintiff. The commission argues the federal statute is inapplicable because our provisions in chapter 306A, which are reciprocal to the federal statute, are more strict.

We need not resolve the argument for the reason our interpretation of our statute compels a reversal of the trial court. Even if our statute is not as liberal as the federal statute in terms of allowances made to the utility, it is liberal enough to demand rejection of the interpretation suggested by the commission and adopted by the trial court.

Reversed and remanded.